FILED

2014 MAR 25   AM 11: 49

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: _____

COPY

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Harold A. Barza (Bar No. 80888)
2      halbarza@quinnemanuel.com
      Bruce E. Van Dalsem (Bar No. 124128)
3      brucevandalsem@quinnemanuel.com
      Matthew S. Hosen (Bar No. 291631)
4      matthosen@quinnemanuel.com
5  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  *Of Counsel:*

8  DECHERT LLP
      Robert A. Cohen (*pro hac vice* to be filed)
9      robert.cohen@dechert.com
   1095 Avenue of the Americas
10  New York, NY 10036
   Telephone:  (212) 698-3500
11  Facsimile:   (212) 698-3599

12  Attorneys for Plaintiff NML Capital, Ltd.

13

14                    **UNITED STATES DISTRICT COURT**

15                    **CENTRAL DISTRICT OF CALIFORNIA**

16  NML CAPITAL, LTD.,                    CASE NO. CV14-02262-SVW(Ex)

17                 Plaintiff,             **COMPLAINT FOR CREDITOR'S
                                          SUIT**
18         vs.

19  SPACE EXPLORATION
   TECHNOLOGIES CORP., aka
20  SPACEX, a Delaware corporation; THE
   REPUBLIC OF ARGENTINA, a
21  foreign state, including its *COMISIÓN
   NACIONAL DE ACTIVIDADES
22  ESPACIALES*, aka CONAE, a political
   subdivision of the Argentine State; and
23  DOES 1-10,

24                 Defendants.

25

26

27

28

J1998.23618/5832776.1

COMPLAINT FOR CREDITOR'S SUIT

Plaintiff NML Capital, Ltd. ("NML"), for its complaint herein, alleges as follows:

## NATURE OF THE ACTION

1.      NML is a judgment creditor of Defendant the Republic of Argentina ("Argentina"), against which it holds final and non-appealable judgments issued by a Federal Court in New York totaling, with interest through March 24, 2014, more than $1.7 billion.   The judgments arise out of Argentina's default on billions of dollars of bonds which it issued to the public and then repudiated.

2.      Argentina has not paid the judgments, and has done everything in its power to obstruct NML's efforts to enforce them.   As the United States Court of Appeals for the Second Circuit recently stated: "Argentina will simply refuse to pay any judgments."   *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 262 (2d Cir. 2012).   Indeed, that Court subsequently noted: "Argentina's officials have publicly and repeatedly announced their intention to defy any rulings of this Court and the district court with which they disagree."   *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 238 (2d Cir. 2013).

3.      Accordingly, NML brings this creditor's suit pursuant to Rule 69 of the Federal Rules of Civil Procedure and Section 708.210 *et seq.* of the California Code of Civil Procedure, to enforce two of the judgments that have been registered in this District by executing against property of Argentina used for commercial activity in this District, namely, Argentina's valuable contractual rights under its launch services contracts (the "Launch Services Contracts") with Los Angeles County-based defendant Space Exploration Technologies Corp., aka SpaceX ("SpaceX"), and any related property of Argentina in the United States that is also being used for a commercial activity in the United States (collectively, "the Property").

4.      By serving this complaint on SpaceX pursuant to C.C.P. § 708.210, *et seq.*, NML seeks to execute on the Property, have it sold, and apply the proceeds towards the satisfaction of the Judgments (as defined below).   In connection with

1  these efforts, NML may request the appointment of a receiver, as well as injunctive

2  and/or other equitable relief, in order to maximize the value of the Property and to

3  apply the proceeds of the sale of the Property to the Judgments in an orderly

4  manner.

5  **THE PARTIES**

6  5.      NML is a limited liability corporation organized under the laws of the

7  Cayman Islands with its registered office at Huntlaw Corporate Services, the

8  Huntlaw Building, 75 Fort Street, P.O. Box 1350, Grand Cayman, Cayman Islands.

9  NML is managed by Elliott Management Corp., a New York-based hedge fund that

10  manages money for a wide range of institutional investors, including university

11  endowments, foundations and pension funds.

12  6.      Defendant SpaceX is a Delaware corporation with a principal place of

13  business at 1 Rocket Road, Hawthorne, California 90250.   It is in the business of

14  providing satellite launch services pursuant to contractual arrangements with its

15  customers in exchange for a fee.

16  7.      Defendant Argentina is a foreign state as defined under 28 U.S.C.

17  § 1603(a).   Under the Foreign Sovereign Immunities Act ("FSIA") political

18  subdivisions are integral parts of the state itself.   The *Comisión Nacional de*

19  *Actividades Espaciales* ("CONAE") (the English translation of which is National

20  Space Activities Commission), is the Argentine political subdivision through which

21  Argentina has contracted with SpaceX for at least two satellite launches on

22  SpaceX's Falcon 9 launch vehicle (the "Launch Services Contracts" or the

23  "Contracts").   NML is informed and believes and alleges thereon that such launches

24  are currently scheduled for 2015 and 2016.

25  8.      The true names and capacities, whether individual, corporate, associate

26  or otherwise, of defendants Does 1 through 10, inclusive, and each of them, are not

27  known to NML at this time.   NML alleges on information and belief that such

28  defendants may have legal, possessory and/or other interests in the Property,

1   including in the Launch Services Contracts.   Plaintiff will amend this complaint to

2   set forth the true names and capacities of such defendants when they have been

3   ascertained.

4   **JURISDICTION AND VENUE**

5         9.     Original federal subject matter jurisdiction over this action exists

6   pursuant to 28 U.S.C. § 1330(a) because this is an action against a foreign state with

7   respect to which the foreign state is not entitled to immunity under either the FSIA,

8   28 U.S.C. §§ 1605 *et seq.*, or under any applicable international agreement, as set

9   forth in greater detail at paragraphs 15-26 below.   This Court has supplemental

10  jurisdiction over the claims asserted herein against all defendants other than

11  Argentina, pursuant to 28 U.S.C. § 1367(a), because such claims are related to those

12  asserted against Argentina.

13        10.    Venue is proper in this judicial district pursuant to 28 U.S.C.

14  §1391(b)(2) because the Property is located in this District.

15  **NML'S MONEY JUDGMENTS AGAINST ARGENTINA**

16        11.    NML has brought eleven actions against Argentina seeking money

17  judgments based upon Argentina's default on its bonds.   As of the filing of this

18  complaint, final judgments for which no appeals are pending have been entered in

19  five of those actions.   Two of the judgments are the subject of this action.   To wit:

20        12.    On December 18, 2006, NML was awarded a money judgment in Case

21  No. 03 Civ. 8845 (TPG) (S.D.N.Y.) in the amount of $284,184,632.30 (the "8845

22  Judgment").   A true and correct copy of the Judgment is attached as Exhibit A.   As

23  of March 24, 2014, the 8845 Judgment had accrued post-judgment interest in the

24  amount of $117,608,603.34, bringing the principal and interest on the 8845

25  Judgment to $401,793,235.64, plus per diem interest of $53,789.47 after March 24,

26  2014.   The 8845 Judgment was registered in this District pursuant to 28 U.S.C.

27  § 1963 on May 5, 2011 and assigned Case No. 13-MC-193, reassigned as

28  11-CV-3970-SJO (RZx).

13.     On June 15, 2009, NML was awarded a money judgment in Case No. 06 Civ. 6466 (TPG) (S.D.N.Y.) in the amount of $533,378,361 (the "6466 Judgment" and together with the 8845 Judgment, the "Judgments").   A true and correct copy of the 6466 Judgment is attached as Exhibit B.   As of March 24, 2014, the 6466 Judgment had accrued post-judgment interest in the amount of $12,692,638.77, bringing the principal and interest on the 6466 Judgment to $546,070,999.77, plus per diem interest of $7,301.80 after March 24, 2014.   The 6466 Judgment is being registered in this District concurrently with the filing of this complaint.

14.     NML has been awarded three other judgments, which when combined with the 8845 Judgment and the 6466 Judgment at issue in this action and interest due as of March 24, 2014, total over $1.7 billion.   Argentina refuses voluntarily to pay any portion of these judgments.

## THE FSIA AUTHORIZES THIS ACTION TO LEVY AGAINST THE PROPERTY

15.     This action is authorized by the FSIA, 28 U.S.C. §§ 1602-1610.

16.     Pursuant to § 1605(a)(1) of the FSIA, an action can be brought against a foreign state if the foreign state has waived its immunity.   In this case, Argentina has waived such immunity, including in Section 22 of the October 19, 1994 Fiscal Agency Agreement ("FAA") that governs the Argentine bonds on which NML's Judgments are based.   Specifically, in the FAA, Argentina "irrevocably waive[d] and agree[d] not to plead any immunity from the jurisdiction of any [] court to which it might otherwise be entitled" in connection with any action to enforce a judgment based on the bonds – including this action.   The terms and conditions of these bonds extend this waiver to any action to enforce such a judgment against any of Argentina's "revenues, assets or properties."

17.     Further, under the FSIA, CONAE is part of the Argentine state, such that a judgment against Argentina is a judgment against CONAE.

18.    Under the FSIA, as interpreted by the courts, a distinction is made between entities that are "agencies and instrumentalities" of a foreign state, on the one hand, and political subdivisions of the foreign state, on the other hand.   As articulated by the United States Court of Appeals for the Second Circuit, the determination of whether an entity is an "agency and instrumentality" of a foreign state or, instead, is a political subdivision of that state, depends on whether the "core function" of the entity is commercial or governmental.   If the entity's core functions are commercial, then it is an "agency or instrumentality" of the state for purposes of the FSIA.   But if its core functions are governmental, then it is a political subdivision of the state, and not an "agency or instrumentality" under the FSIA.   *See Garb v. Republic of Poland*, 440 F.3d 579, 594-95 (2d Cir. 2006) (adopting and applying the "core function" test and holding that the Ministry of the Treasury of Poland was a political subdivision and not an "agency or instrumentality" of the Republic of Poland because its "core function" is governmental rather than commercial); *see also Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151-53 (D.C. Cir. 1994) (adopting the "core function" test); *Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 495 F.3d 1024, 1035 (9th Cir. 2007) (same), *reversed on other grounds*, *Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366 (2009).

19.    The core functions of CONAE are governmental.   As a result, it is a political subdivision of Argentina and the Judgments are judgments not only against Argentina, but also against CONAE.

20.    CONAE was established in 1991 by Argentine National Decree 995/91 ("Decree 995/91").   A true and correct copy of a certified translation of Decree 995/91 is annexed hereto as Exhibit C.   The decree declared that the "advance of space science and technology are of great interest for the National State, because of the numerous public-policy derivations created by their practical applications."

1    The decree further stated that CONAE is a "national authority" "established to
2    centralize, organize, manage, and execute an overall space policy" because "[t]he
3    technical complexity of space activities makes essential an appropriate organization
4    and coordination of all national entities, both private and public, related to said
5    activities, to prevent scattering and overlapping of efforts."   The CONAE website,
6    www.conae.gov.ar, has an Argentine government domain name and describes
7    CONAE as a "specialized agency of the Argentine State" with a mission "to plan,
8    execute and evaluate a **National Space Program** for peaceful use of space science
9    and technology."   (http://www.conae.gov.ar/index.php/en/institutional/about-conae
10   (emphasis in original)).

11           21.    CONAE has two functions under Argentine law: (a) proposing a
12   National Space Program, which it did in 1994, and (b) centralizing, organizing,
13   managing, and executing the National Space Program.   CONAE also has a number
14   of duties, such as channeling the transfer of space technology; coordinating all
15   activities of the National Space Program, including all public and private
16   institutions; promoting and developing agreements for cooperation with public and
17   private entities of other countries; and executing and contributing to the complete
18   development of national space projects.

19           22.    CONAE also is charged with implementing at least two treaties to
20   which Argentina is a party: the Convention on the Registration of Objects Launched
21   into Outer Space, and the Basic Agreement for Cooperation in Peaceful
22   Applications of Space Science and Technology, by and between the Government of
23   the Argentine Republic and the Government of the Federative Republic of Brazil.

24           23.    CONAE does not have financial independence and is funded annually
25   by the Argentine National Congress.   Decree 995/91, Article 6 provides, in
26   translation:

27

28

The resources of [CONAE] are as follows:

(a) The items assigned to it in the national budget, parliamentary approval for which shall be managed by the Executive Branch in conformity with the following procedure:

(I)     Before each fiscal year, the Commission shall prepare an annual program containing a detailed analysis of all the projects scheduled for that period, together with an annual report of its activities;

(II)     The application for approval of the budget items shall be formulated with respect to each individual project in particular and the annual program in general.

24.     CONAE is also under the direct control of the Argentine government. Eight of the nine members of its Board of Directors are governmental appointments. The Minister of Foreign Trade, International Relations and Religion is the Chairperson.   The Secretary of Foreign Relations is the Vice-Chairperson and six members of the Board are selected by the Argentine president.   Decree 995/91, Article 5.   "The Chairperson must present to the President of the Nation an annual report on the activities performed by the agency."   *Id.*

25.     Because CONAE's core functions are governmental in nature, CONAE is an integral part of the Argentine state – a political subdivision in FSIA parlance – and liable for the Judgments.

26.     Under 28 U.S.C. § 1610, CONAE's property in the United States used for a commercial activity in the United States is not immune and is available for the satisfaction of Argentina's debts.

## THE ARGENTINE LAUNCH SERVICES CONTRACTS
## AND RELATED PROPERTY ARE SUBJECT TO
## EXECUTION TO SATISFY NML'S JUDGMENTS

27.    When a foreign state has waived sovereign immunity, as Argentina has done here, the FSIA provides that "[t]he property in the United States of [that] foreign state . . . used for a commercial activity in the United States, shall not be immune from … execution, upon a judgment entered by a court of the United States … if the foreign state has waived its immunity … from execution either explicitly or by implication . . .."  (28 U.S.C. § 1610(a)(1)).

28.    In determining whether the property of a foreign state is used for a "commercial activity," the FSIA provides that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, *rather than by reference to its purpose*."  (28 U.S.C. § 1603(d) (emphasis added)).

29.    The Property, which includes CONAE's valuable rights under the Launch Services Contracts with SpaceX, falls squarely within Section 1610(a) of the FSIA.

30.    Through CONAE, Argentina has acquired rights of a commercial nature by contracting with SpaceX for at least two satellite launches aboard SpaceX Falcon 9 launch vehicles.   According to the launch manifest maintained on SpaceX's website, Argentina contracted for two Falcon 9 launches from SpaceX's launch facility at Vandenberg Air Force Base in 2014 and 2015.   (*See* www.spacex.com/missions, attached as Exhibit D).   According to the October 2013 edition of *Aerospace America*, those launch dates have now moved to 2015 and 2016.   (*Aerospace America*, October 2013, attached hereto as Exhibit E, at page 15).

31.     NML is informed and believes, and alleges thereon, that CONAE has made substantial payments to SpaceX under the Launch Services Contracts and is not in default thereunder.

32.     CONAE's purchase of private launch services from SpaceX, as well as the launch services to be provided to CONAE by SpaceX, are plainly "commercial activity" within the meaning of the FSIA.   As SpaceX has stated, it is in the business of providing private, commercial space transport.   It is the commercial nature of those launch services and the commercial negotiation of them by CONAE that governs under the FSIA, not the purpose for which Argentina will use those launch services.   The following statement from a recent press release explains the commercial nature of the launch services offered by SpaceX: "SpaceX has nearly 50 launches on manifest, of which over 60% are for commercial customers."[1]

33.     Private companies such as Thaicom, ORBCOMM, Iridium and Bigelow Aerospace have contracted with SpaceX for commercial launch services, just as Argentina has done.   By entering into the Launch Services Contracts, Argentina has acquired Property in the United States and is thereby engaging in a commercial activity for purposes of the FSIA.   *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614-15 (1992) ("a contract [to which a sovereign is a party] to buy army boots or even bullets is a 'commercial' activity, because private companies can similarly use sales contracts to acquire goods.").   Because the nature of the Launch Services Contracts is commercial, any Property of Argentina in the United States that it acquired or maintains in connection with those contracts is used for commercial activity in the United States.

34.     Because Argentina has waived sovereign immunity, and because the Launch Services Contracts are used for a commercial activity in the United States,

---

[1]   Available at http://www.spacex.com/press/2013/12/03/spacex-successfully-completes-first-mission-geostationary-transfer-orbit.

1  Argentina's property interest in the Property may be executed upon in satisfaction of
2  NML's Judgments.

### **CLAIM FOR RELIEF**

(Against All Defendants for Application of the

Launch Services Contracts to NML's Judgments)

35.     NML repeats and realleges each and every allegation of Paragraphs 1 to 34 of this complaint as set forth herein.

36.     As a political subdivision of Argentina, CONAE is liable for judgments entered against Argentina, including NML's Judgments.

37.     Argentina's rights in the Launch Services Contracts are property owned by CONAE within this District and subject to a creditor's suit under the FSIA.   Any related Property of Argentina that is in the possession or control of defendants and located in this District is subject to a creditor's suit under the FSIA.

38.     Therefore, pursuant to Rule 69 of the Federal Rules of Civil Procedure, Section 708.210 *et seq.* of the California Code of Civil Procedure, and 28 U.S.C. § 1610, NML is entitled to an order applying the Property, including the Launch Services Contracts, to the satisfaction of NML's Judgments.

39.     Given the nature of the Property, including the Launch Services Contracts, and in light of the interests of both NML and Argentina, the appointment of a receiver may be a reasonable method to effect the fair and orderly application of the proceeds of the sale of the Property to the satisfaction of the Judgments, and NML therefore may seek the appointment of a receiver pursuant to C.C.P. § 708.620 for the purpose of marshalling, maintaining, selling or otherwise monetizing the Property, including the Launch Services Contracts, and applying the cash to the satisfaction of NML's Judgments.

40.     Should defendants threaten to take any action, or fail to take any action, that would jeopardize Argentina's property interest in the Property, NML would suffer irreparable harm for which money damages would be inadequate.   In such

1   event, NML will seek and be entitled to a temporary restraining order, preliminary

2   injunction and permanent injunction enjoining defendants from jeopardizing such

3   property interest.

4        WHEREFORE, for its prayer for relief, NML seeks:

5        1.    A judgment applying the Property, including the Argentine Launch

6   Services Contracts, to the satisfaction of NML's Judgments against Argentina;

7        2.    If and when requested by NML, the appointment of a receiver pursuant

8   to C.C.P. § 708.620 for the purpose of marshalling, maintaining, selling or otherwise

9   monetizing the Launch Services Contracts in satisfaction of NML's Judgments;

10        3.    If and when requested by NML, a temporary restraining order,

11   preliminary injunction and permanent injunction enjoining defendants from

12   jeopardizing Argentina's property interest in the Property, including the Launch

13   Services Contracts;

14        4.    Attorneys' fees and costs; and

15

16   DATED:   March 24, 2014      QUINN EMANUEL URQUHART &

17                         SULLIVAN, LLP
                               Harold A. Barza

18                             Bruce E. Van Dalsem

19                             Matthew S. Hosen

20

21        By

22                _Harold Barza_

23                Harold A. Barza

24        DECHERT LLP
                  Robert A. Cohen (of counsel)

25                  robert.cohen@dechert.com
        1095 Avenue of the Americas

26        New York, NY 10036
        Telephone:   (212) 698-3500

27        Facsimile:   (212) 698-3599

28        Attorneys for Plaintiff NML Capital, Ltd.

-11-

COMPLAINT FOR CREDITOR'S SUIT

# EXHIBIT A

AO 451 (Rev. 01/09) Clerk's Certification of a Judgment to be Registered in Another District

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

FILED
CLERK, U.S. DISTRICT COURT

MAY - 5 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| NML CAPITAL. LTD | ) |
| *Plaintiff* | ) |
| v. | ) |
| THE REPUBLIC OF ARGNETINA | ) |
| *Defendant* | ) |

11-mc-193

Civil Action No. ~~03 Civ. 8845(TPG)~~

## CLERK'S CERTIFICATION OF A JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT

I certify that the attached judgment is a copy of a judgment entered by this court on *(date)*     12/18/2006     .

I also certify that, as appears from this court's records, no motion listed in Fed. R. App. P. 4(a)(4)(A) is pending before this court and that no appeal has been filed or, if one was filed, that it is no longer pending.

Date:     04/12/2011

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*



#86

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X
                                                        :
NML CAPITAL, LTD.,                                      :
                                                        :
                     Plaintiff,                         :       11-mc-193
                                                        :       03 Civ. 8845 (TPG)
          -against-                                     :
                                                        :
THE REPUBLIC OF ARGENTINA,                              :       **JUDGMENT**
                                                        :
                     Defendant.                         :       # 06,2728
                                                        :
------------------------------------------------------ X

        Plaintiff NML Capital, Ltd., having moved this court for summary judgment and

the matter having come before the Honorable Thomas P. Griesa, United States District Court,

and the Court, in its Opinion dated May 11, 2006, having granted summary judgment to plaintiff

and directed that judgment be entered for the principal amount of the bonds described below,

plus accrued interest,

        NOW, it is hereby

        **ORDERED, ADJUDGED AND DECREED** that plaintiff shall recover from

defendant The Republic of Argentina ("Argentina") $284,184,632.30, calculated as follows:

        1.      With respect to the 10.25% Global Bonds due July 21, 2030, CUSIP No.

040114GBO, plaintiff shall recover from Argentina $180,652,105.58, comprised of: (i)

$111,909,000.00 (unpaid principal amount of the bonds; (ii) $60,157,304.74 (unpaid interest on

the principal amount of the bonds, at the contract rate of 10.25%); and (iii) $8,585,800.84

(interest on the unpaid interest, calculated at the statutory rate of 9%).

2.       With respect to the 12% Global Bonds due February 1, 2020, CUSIP No. 040114FB1, plaintiff shall recover from Argentina $103,532,526.72, comprised of: (i) $60,244,000.00 (unpaid principal amount of the bonds); (ii) $37,913,557.04 (unpaid interest on the principal amount of the bonds, at the contract rate of 12%); (iii) $5,374,969.68 (interest on the unpaid interest, calculated at the statutory rate of 9%).

It is further **ORDERED** that, until further notice from the Court, plaintiff must refrain from selling or otherwise transferring the bonds involved in this action, without advising the Court in advance and obtaining the permission of the Court.

Dated: New York, New York
       December 18, 2006

ENTER:

_____
United States District Judge

_____
Clerk of the Court

By:_____
Deputy Clerk

**THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON** 12/18/06

A CERTIFIED COPY
RUBY J. KRAJICK, CLERK

BY_____
Deputy Clerk





PAID

MAY 5 2011

Clerk, US District Court
CC:IHI 4512

# EXHIBIT B

AO 451 (Rev. 01/09)  Clerk's Certification of a Judgment to be Registered in Another District

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

| | | |
|---|---|---|
| NML CAPITAL, Ltd. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action  No.  1:06-cv-06466-TPG |
| The Republic of Argentina, et al. | ) | |
| *Defendant* | ) | |

## CLERK'S CERTIFICATION OF A JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT

I certify that the attached judgment is a copy of a judgment entered by this court on *(date)*    06/15/2009    .

I also certify that, as appears from this court's records, no motion listed in Fed. R. App. P. 4(a)(4)(A) is pending before this court and that no appeal has been filed or, if one was filed, that it is no longer pending.

Date:  *December 20, 2013*

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X
                               :

NML CAPITAL, LTD.,                    :

               Plaintiff,             :

      -against-                      :      06 Civ. 6466 (TPG)

THE REPUBLIC OF ARGENTINA,           :

              Defendant.             :      **AMENDED JUDGMENT**

                               :

------------------------------------ X

        Plaintiff NML Capital, Ltd. ("NML"), having moved this court for summary judgment, and the matter having come before the Honorable Thomas P. Griesa, United States District Court, and the Court, in its Order dated March 28, 2008, having granted summary judgment to NML and directed that judgment be entered for the principal amount of the Floating Rate Accrual Notes ("FRANs") at issue in this action, as described below, plus accrued interest, and the Court, in its Opinion dated March 18, 2009, having granted NML's motion for partial summary judgment as to the amount of interest owed on the FRANs at issue in this action, and for entry of judgment,

        NOW, it is hereby

        **ORDERED, ADJUDGED AND DECREED** that NML shall recover from defendant The Republic of Argentina the amount of $533,378,361, which comprises:   (i) $54,850,000 (the unpaid principal amount of NML's holding of FRANs at issue in this action); (ii) $370,123,536 (accrued and unpaid contractual interest as of May 22, 2009, on the principal amount of NML's holding of the FRANs at issue in this action, excluding statutory interest on

13419637

unpaid contractual interest); (iii) $105,993,485 (statutory interest as of May 22, 2009 calculated at a rate of 9% per annum on accrued and unpaid contractual interest); and (iv) an additional $241,134.00 for each of the ten calendar days following May 22, 2009 up to and including June 1, 2009, the date on which the original version of this judgment was entered on the docket of the District Court.

It is further **ORDERED** that, until further notice from the Court, NML must refrain from selling or otherwise transferring the FRANs at issue in this action, without advising the Court in advance and obtaining the permission of the Court.

Dated: New York, New York
June 12, 2009

ENTER:

United States District Judge
Part I

_____
Clerk of the Court

By: _____
Deputy Clerk

A CERTIFIED COPY
RUBY J. KRAJICK, CLERK

BY _____ Deputy Clerk

13419637

# EXHIBIT C

NATIONAL DECREE 995/1991
ESTABLISHMENT OF THE NATIONAL SPACE ACTIVITIES COMMISSION
BUENOS AIRES, 28 May 1991
*BOLETIN OFICIAL*, 03 June 1991
In general force and effect

ACTIVE EFFECT
ABROGATES National Decree 1.164/60
BY ART. 8 (*B.O.* 03 June 1991)

PASSIVE EFFECT
AMENDED BY National Decree 1.435/91 Art. 1
AMENDS SUB-PARAGRAPH A) OF ART. 5 (*B.O.* 05 August 1991)

AMENDED BY National Decree 2.239/91 Art. 1
RECTIFIES ART. 8 (*B.O.* 04 November 1991)

NOTED BY Text Established Law 11.672 Art. 32
RATIFIES DECREE (*B.O.* 22 July 1996)

AMENDED BY National Decree 1.615/99 Art. 15
REPLACES ART. 5 (*B.O.*  21 December 1999)

Amended by National Decree 157/03 Art. 1
SUB-PARA. A) ART. 5 SUBST. (*B.O.* 31 January 2003)


GENERALITIES
Summary:
ESTABLISHMENT OF THE NATIONAL SPACE ACTIVITIES COMMISSION.
ESTABLISHMENT OF ITS DUTIES.

RELATED NOTES: Decrees 995/91 and 1435/19 are ratified by Art. 32 of Law 11.672.
PRIOR HISTORY: ART. 5 REPLACED BY ART. 1 OF DECREE 1662/90 (*B.O.* 15 January 1997)

SUBJECT
SCIENCE AND TECHNOLOGY – NATIONAL SPACE ACTIVITIES COMMISSION:
ESTABLISHMENT: DUTIES – NATIONAL SPACE PLAN

WHEREAS
The advance of space science and technology are of great interest for the National State, because of the numerous public-policy derivations created by their practical applications;
Our country preserves its right to technological and scientific development for peaceful purposes;
The experience achieved by our country in the space field has to be exploited;

EXHIBIT C

The technical complexity of space activities makes essential an appropriate organization and coordination of all national entities, both private and public, related to said activities, to prevent scattering and overlapping of efforts;

A national authority has to be established to centralize, organize, manage, and execute an overall space policy;

The ARGENTINE REPUBLIC rejects any and all offensive military use of space activities, and acknowledges its intention to work in this field with a strong sense of peace, responsibility, and transparency;

It is appropriate to increase the participation of the National Congress in the scheduling and control of national space policy,

THE PRESIDENT OF THE ARGENTINE NATION
DECREES:

Article 1:
Art. 1. The COMISION NACIONAL DE ACTIVIDADES ESPACIALES (CONAE) [National Space Activities Commission] is established, with power to act publicly and privately in the scientific, technical, industrial, commercial, management, and financial fields, with full management and financial independence, reporting directly and exclusively to the President of the Nation.

Article 2:
Art. 2. The NATIONAL SPACE ACTIVITIES COMMISSION is the only National Government agency competent to undertake, design, execute, control, manage and administer space projects and undertakings, and it has the following functions:

a) Propose the National Space Plan for the Use and Exploitation of Space Science and Technology for peaceful purposes, as well as its financing mechanism, which must be approved by the NATIONAL EXECUTIVE BRANCH;

b) Centralize, organize, manage, and execute the National Space Plan.

Article 3:
Art. 3. The duties of the NATIONAL SPACE ACTIVITIES COMMISSION are:

a) Perform research activities leading to the formation of groups having the knowledge and technology necessary in order to access space technology and its applications;
b) Engage in development of advanced engineering, in the fields necessary in order to achieve an appropriate national space technology;
c) Execute and contribute to complete development of national space projects;
d) Provide initial and continuing training of researchers, professionals, technicians, and appropriate personnel, by means of courses, scholarships, and interaction with universities, government agencies, and other institutions in the country or in other countries;
e) Channel the transfer of space technology to government entities and especially, under license, to the private sector,  for use in agronomy, cartography, mining prospection, meteorology,

EXHIBIT C

geology, environment protection, medicine, communications, defense, industry, and other areas, providing technical assistance to achieve the quality guidelines established;
f) Enter into agreements with other domestic private entities or agencies, for the purpose of transferring or cooperating in the development of space activities;
g) Provide technical assistance to the National Government for participation in conferences, conventions, seminars, meetings, and international agencies engaged in space matters;
h) Coordinate all activities of the National Space System, including all public and private institutions directly or indirectly engaged in space activities;
i) Obtain the financial resources necessary for performance of its activities;
j) Promote and develop agreements for cooperation with public and private entities of other countries, in conformity with the foreign policy of the republic and with proper intervention by the MINISTRY OF FOREIGN RELATIONS AND RELIGION.

Article 4:
Art. 4. Without prejudice of the provisions of the preceding articles, CONAE, acting with public and private capacity, may:
a) Appoint and remove scientific, technical, and administrative personnel, temporarily or permanently;
b) Issue its internal regulations and establish its organic structure;
c) Enter into agreements with public or private entities, and sign the contracts necessary for the achievement of its goals;
d) Engage in acts of trade, consequent upon the contracts it signs, inherent in the purposes established in this decree;
e) Perform all the legal acts necessary for its normal operation;
f) Propose a system for control of any transfer outside the country of space technology and equipment and for control of weapons, in conformity with the non-proliferation criteria and parameters; said system requires prior authorization by a commission to be established and consisting of the MINISTRIES OF DEFENSE, ECONOMY AND LABOR AND PUBLIC SERVICES and FOREIGN RELATIONS AND RELIGION.

Article 5:
*Art. 5. THE NATIONAL SPACE ACTIVITIES COMMISSION (CONAE) shall have the following organic structure:

a) A Board of Directors composed of NINE (9) members: EIGHT (8) political members and ONE (1) executive/technical member. The Board shall be composed as follows:

Political members:
-A Chairperson. The position of Chairperson shall be held by the Minister of Foreign Relations, International Trade, and Religion.
The Chairperson must present to the President of the Nation an annual report on the activities performed by the agency;
-A Vice-Chairperson. The position of Vice-Chairperson shall be held by the Secretary of Foreign Relations of the MINISTRY OF FOREIGN RELATIONS, INTERNATIONAL TRADE, AND RELIGION;



-A representative, appointed by the NATIONAL EXECUTIVE BRANCH upon proposal by each of the following areas of the National Public Administration:

MINISTRY OF FOREIGN RELATIONS, INTERNAL TRADE, AND RELIGION
MINISTRY OF EDUCATION, SCIENCE, AND TECHNOLOGY
MINISTRY OF DEFENSE
MINISTRY OF ECONOMY
DEPARTMENT OF SCIENCE, TECHNOLOGY, AND PRODUCTION INNOVATION of the MINISTRY OF EDUCATION, SCIENCE, AND TECHNOLOGY;
DEPARTMENT OF COMMUNICATIONS of the MINISTRY OF ECONOMY

These officials shall remain in their positions for FOUR (4) years. The political members of the Board shall receive only the agency expenses resulting from application of Decree N 411 of 06 March 1992.

Executive/technical member:
A permanent plan professional who shall be appointed by the Board members to perform the duties of Executive and Technical Manager.
The Executive and Technical Manager may be removed for serious cause. While in the position, he shall receive a total gross compensation at the maximum scale level of the Agency.

b) Same as in Decree 1662/96
c) Same as in Decree 1662/96
d) Same as in Decree 1662/96

Normative references: National Decree 1.662/96

Article 6:
Art. 6. The resources of the NATIONAL SPACE ACTIVITIES COMMISSION are as follows:

a) The items assigned to it in the national budget, parliamentary approval for which shall be managed by the Executive Branch in conformity with the following procedure:
I) Before each fiscal year, the Commission shall prepare an annual program containing a detailed analysis of all the projects scheduled for that period, together with an annual report of its activities;
II) The application for approval of the budget items shall be formulated with respect to each individual project in particular and the annual program in general;
b) Income from the economic and commercial exploitation of patents, license, consulting, providing of services, and any other income originating in the activity that it performs;
c) Funds originating in or assigned to it pursuant to special laws;
d) Income from performance of research and studies;
e) Gifts and bequests.

Article 7:
Art. 7. The assets of the NATIONAL SPACE ACTIVITIES COMMISSION shall be composed of the following:

EXHIBIT C

a) The properties and installations of the Comisión Nacional de Investigaciones Espaciales (CNIE) [National Space Research Commission] located at Avenida Dorrego 4010 in the Federal Capital; the Falda del Carmen industrial facility in the Province of Córdoba; and the San Miguel Space Research Laboratory in the Province of Buenos Aires, which shall be transferred to CONAE as administrative and technical offices;

b) The properties that as of this date are substantially allocated by the Armed Forces and other government agencies to space activities; for this purpose the MINISTRY OF DEFENSE must provide a list within thirty days, together with the corresponding inventory, for their transfer;

c) The actions, rights, and obligations owned by the National Space Research Commission (CNIE) in or with respect to the companies D.E.A., I.A.S.A., IFAT Corporation, Consultec, Desintec, and Consen, and with respect to any other legal entity, to be retained and exercised to the extent that their purpose is compatible with the purpose and the goals of the National Space Activities Commission (CONAE);

d) The assets that it may acquire later in conformity with the provisions of the within decree or other laws that may be applicable to it.

Article 8:

*Art. 8. Decree N. 1.164 of 28 January 1960 is repealed, and the National Space Research Commission (CNIA) is dissolved. All elements, parts, and components of the Condor II missile, in all its versions and stages of development existing as of this date, shall be de-activated, dismantled, reconverted, and/or disabled, depending on their possibilities of use for peaceful purposes and applications, in order conclusively and definitively to effectuate complete and irreversible cancellation of the project in question, with transfer of the scientific personnel, installations, and materials involved to the new National Space Activities Commission (CONAE).

Article 9:

Art. 9. Serve, publish, send to the National Official Register Office, and File.

SIGNATORIES
MENEM – GONZALEZ – DI TELLA - CAVALLO

EXHIBIT C

Juris Services International
Translation Studio
23 Normandy Terrace
Bronxville, NY 10708
Tel: 212 759-5400 Fax: 212 401-8125

CERTIFICATE OF ACCURACY

State of New York          )
Village of Bronxville     : ss.:
County of Westchester      )

This is to certify that the attached translation from SPANISH into ENGLISH of the
document entitled/described below is a true and accurate rendition of the original Spanish
document:

Decreto Nacional 995/1991

BUENOS AIRES, 28 de Mayo de 1991

John E. Considine
President

Sworn to before me on this
17th day of april 2011

[signature and stamp of notary public]

mary V. Minstrell

MARY V. MINSTRELL
Notary Public, State of New York
No. 60-4634618
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires September 30, 2014

EXHIBIT C

DECRETO NACIONAL 995/1991
CREACION DE LA COMISION NACIONAL DE ACTIVIDADES ESPACIALES
BUENOS AIRES, 28 de Mayo de 1991
BOLETIN OFICIAL, 03 de Junio de 1991
Vigente de alcance general

EFECTO ACTIVO
ABROGA A Decreto Nacional 1.164/60
POR ART. 8 (B.O. 91-06-03)


EFECTO PASIVO
MODIFICADO POR Decreto Nacional 1.435/91 Art.1
MODIFICA INC. A) DEL ART 5 (B.O. 91-08-05)

MODIFICADO POR Decreto Nacional 2.239/91 Art.1
RECTIFICA ART. 8 (B.O. 91-11-04)

OBSERVADO POR Texto Ordenado Ley 11.672 Art.32
RATIFICA DECRETO (B.O. 96-07-22)

MODIFICADO POR Decreto Nacional 1.615/99 Art.15
SUSTITUYE ART. 5 (B.O. 21-12-99)

MODIFICADO POR Decreto Nacional 157/03 Art.1
INC. A) ART. 5 SUST. (B.O. 31-01-2003)


GENERALIDADES
Síntesis :
SE CREA LA COMISION NACIONAL DE ACTIVIDADES ESPACIALES. SE ESTABLECEN
SUS FUNCIONES.

NOTICIAS ACCESORIAS:
OBSERVACION: Por art. 32 de la Ley 11.672 se ratifican los
Decretos 995/91 y 1435/91.
ANTECEDENTES: ART. 5 SUSTITUIDO POR ART. 1 DEL DEC. 1662/96 (B.O. 15-1-97)


 TEMA
 CIENCIA Y TECNOLOGIA-COMISION NACIONAL DE ACTIVIDADES ESPACIALES:
CREACION; FUNCIONES-PLAN ESPACIAL NACIONAL

VISTO  y   CONSIDERANDO
Que el progreso de la ciencia y tecnología espaciales reviste gran interés para el Estado Nacional,
en razón de las múltiples derivaciones de orden público que sus aplicaciones prácticas
determinan.
Que nuestro país preserva su derecho al desarrollo tecnológico y científico con fines pacíficos.
Que es necesario aprovechar la experiencia alcanzada por nuestro país en el campo espacial.
Que la complejidad técnica de las actividades espaciales hace imprescindible una adecuada
organización y coordinación de todas las entidades nacionales, tanto privadas como públicas,
relacionadas con las mismas, evitando dispersión y superposición de esfuerzos.

EXHIBIT C

Que es menester el establecimiento de una autoridad nacional que centralice, organice, administre y ejecute una política global en materia espacial.

Que la REPUBLICA ARGENTINA rechaza toda utilización militar ofensiva de las actividades espaciales, y reconoce su voluntad de trabajar en este campo con un elevado sentido de paz, responsabilidad y transparencia.

Que resulta conveniente incrementar la participación del Congreso de la Nación en la programación y contralor de la política espacial nacional.

EL PRESIDENTE DE LA NACION ARGENTINA
DECRETA:

artículo 1:

Art. 1.- Créase la COMISION NACIONAL DE ACTIVIDADES ESPACIALES (CONAE), con capacidad para actuar pública y privadamente, en los órdenes científico, técnico, industrial, comercial, administrativo y financiero, con plena autarquía administrativa y financiera, y con dependencia directa y exclusiva del Presidente de la Nación.

artículo 2:

Art. 2.- La COMISION NACIONAL DE ACTIVIDADES ESPACIALES es el único organismo del Estado Nacional competente para entender, diseñar, ejecutar, controlar, gestionar y administrar proyectos y emprendimientos en materia espacial, y posee las siguientes funciones:

a) proponer el Plan Nacional Espacial para la Utilización y Aprovechamiento de la Ciencia y Tecnología Espacial con fines pacíficos, así como su mecanismo de financiación, los cuales deben ser aprobados por el PODER EJECUTIVO NACIONAL.

b) centralizar, organizar, administrar y ejecutar el Plan Nacional Espacial.

artículo 3:

Art. 3.- Son funciones de la COMISION NACIONAL DE ACTIVIDADES ESPACIALES:

a) realizar tareas de investigación conducentes a la formación de grupos, que posean disciplinas y técnicas necesarias para el acceso a la tecnología espacial y sus aplicaciones.

b) realizar tareas de desarrollo en ingeniería de avanzada, abarcando los campos necesarios para alcanzar una adecuada tecnología espacial nacional.

c) ejecutar y coadyuvar al desarrollo integral de los proyectos espaciales nacionales.

d) asegurar la capacitación y el permanente perfeccionamiento de investigadores, profesionales, técnicos y personal idóneo, a través de cursos, becas e interacción con universidades, organismos estatales y otras instituciones del país o del exterior.

e) encauzar la transferencia de tecnología espacial para usos en agronomía, cartografía, prospección minera, meteorología, geología, medio ambiente, medicina, comunicaciones, defensa, industriales u otras áreas, a entes estatales, y especialmente, bajo licencia, al sector privado, brindando asistencia técnica para alcanzar las pautas de calidad que determine.

f) concertar convenios con otros organismos o entidades privadas del país, a fin de transferir o cooperar en el desarrollo de las actividades espaciales.

g) prestar asistencia técnica al Estado Nacional para la participación en congresos, convenciones, jornadas, reuniones y organismos internacionales dedicados a la temática espacial.

h) coordinar todas las actividades del Sistema Espacial Nacional, incluyendo todas las instituciones públicas y privadas que realicen, directa o indirectamente, actividades espaciales.

i) obtención de los recursos financieros necesarios para realizar sus actividades.

j) promover y desarrollar acuerdos de cooperación con entidades públicas y privadas de otros países, de conformidad con la política exterior de la República y con la debida intervención del MINISTERIO DE RELACIONES EXTERIORES Y CULTO.

artículo 4:

EXHIBIT C

Art. 4.- Sin perjuicio de lo establecido en los artículos anteriores, la CONAE, actuando con capacidad pública y privada podrá:

a) designar y remover el personal científico, técnico y administrativo, en forma transitoria o definitiva.

b) dictar su reglamento interno y establecer su estructura orgánica.

c) concertar acuerdos con entidades públicas o privadas, y celebrar los contratos necesarios para el cumplimiento de sus finalidades.

d) realizar actos de comercio, como consecuencia de los contratos que celebre, inherentes a los fines establecidos en este decreto.

e) realizar todos los actos jurídicos necesarios para su normal funcionamiento.

f) proponer un régimen de control de toda transferencia al exterior de equipos y tecnología espacial y de control de armamentos, de conformidad con los criterios y parámetros de no proliferación; dicho régimen requiere la autorización previa de una comisión que se establecerá, integrada por los MINISTERIOS DE DEFENSA, ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS y RELACIONES EXTERIORES Y CULTO.


artículo 5:

*Art. 5: LA COMISION NACIONAL DE ACTIVIDADES ESPACIALES (CONAE), tendrá la siguiente estructura orgánica:

a) Un Directorio integrado por NUEVE (9) miembros, OCHO (8) de carácter político y UNO (1) de carácter ejecutivo-técnico. El Directorio estará compuesto de la siguiente forma:

De carácter político.

- Un Presidente. El cargo de Presidente será desempeñado por el Ministro de Relaciones Exteriores, Comercio Internacional y Culto.

Dicho funcionario deberá presentar al Presidente de la Nación, un informe anual de las actividades desarrolladas por el Organismo.

- Un Vicepresidente. El cargo de Vicepresidente será desempeñado por el Secretario de Relaciones Exteriores, del MINISTERIO DE RELACIONES EXTERIORES, COMERCIO NTERNACIONAL Y CULTO.

- Un representante, designado por el PODER EJECUTIVO NACIONAL, a propuesta de cada una de las siguientes áreas de la Administración Pública Nacional: MINISTERIO DE RELACIONES EXTERIORES, COMERCIO INTERNACIONAL Y CULTO.

MINISTERIO DE EDUCACION, CIENCIA Y TECNOLOGIA.

MINISTERIO DE DEFENSA.

MINISTERIO DE ECONOMIA SECRETARIA DE CIENCIA, TECNOLOGIA E INNOVACION PRODUCTIVA del MINISTERIO DE EDUCACION, CIENCIA Y TECNOLOGIA.

SECRETARIA DE COMUNICACIONES del MINISTERIO DE ECONOMIA.

Dichos funcionarios durarán CUATRO (4) años en sus funciones. Los miembros del Directorio de carácter político sólo percibirán los gastos de representación que surjan de la aplicación del Decreto N 411 del 6 de marzo de 1992.

De carácter ejecutivo-técnico - Un Profesional de Planta Permanente que será designado por los miembros del Directorio para ejercer las funciones de Director Ejecutivo y Técnico.

El Director Ejecutivo y Técnico podrá ser removido con causa fundada y mientras ejerza el cargo, recibirá la remuneración bruta total correspondiente al máximo nivel escalafonario del Organismo.

b) Idem que el decreto 1662/96.

c) Idem que en el decreto 1662/96.

d) Idem que en el decreto 1662/96.


Ref. Normativas:  Decreto Nacional 1.662/96

EXHIBIT C

artículo 6:
 Art. 6.- Son recursos de la COMISION NACIONAL DE ACTIVIDADES ESPACIALES:
a) las partidas que se le asignen en el presupuesto de la Nación, cuya aprobación parlamentaria será
gestionada a través del Poder Ejecutivo de conformidad con el siguiente procedimiento:
I) antes de cada ejercicio, la Comisión elevará un programa anual que contenga un análisis detallado
de todos los proyectos previstos para ese período, junto con una memoria anual de sus actividades.
II) la solicitud de aprobación de las partidas presupuestarias se formulará con respecto a cada uno
de los proyectos en particular, y al programa anual en general.
b) los ingresos provenientes de la explotación económica y comercial de patentes, licencias,
asesoramiento, prestación de servicios y cualquier otro originado en la actividad que desarrolle.
c) los fondos que provengan o se le asignen por la aplicación de leyes especiales.
d) los ingresos que se le adjudiquen para realizar investigaciones y estudios.
e) las donaciones y legados.

 artículo 7:
 Art. 7.- El patrimonio de la COMISION NACIONAL DE ACTIVIDADES ESPACIALES estará
integrado con los siguientes bienes:
a) los inmuebles e instalaciones de la Comisión Nacional de Investigaciones Espaciales (CNIE)
sitos en Avenida Dorrego 4010 de la Capital Federal, la planta industrial de Falda del Carmen en la
Provincia de Córdoba y el laboratorio de Investigaciones Espaciales de San Miguel en la Provincia
de Buenos Aires, que serán transferidos a la CONAE como sedes administrativa y técnica.
b) los que a la fecha estuvieren sustancialmente afectados por las Fuerzas Armadas y otros
organismos del Estado a las actividades espaciales; a tal efecto el MINISTERIO DE DEFENSA
deberá realizar en el término de treinta días un relevamiento y el correspondiente inventario para su
transferencia.
c) las acciones, derechos y obligaciones de que la Comisión Nacional de Investigaciones Espaciales
(CNIE) fuere titular en o con respecto a las empresas, D.E.A.; I.A.S.A.; IFAT Corporation;
Consultec; Desintec; Consen; y con respecto de cualquier otro ente jurídico, a conservarse y
ejercerse en la medida en que su propósito resultare compatible con el objeto y los fines de la
COMISION NACIONAL DE ACTIVIDADES ESPACIALES (CONAE).
d) los que adquiera posteriormente conforme a las disposiciones del presente decreto o de las demás
leyes que le fueran aplicables
 artículo 8:
 *Art. 8.- Derógase el Decreto N. 1.164 del 28 de enero de 1960, y
disuélvese la Comisión Nacional de Investigaciones Espaciales, (CNIA), disponiéndose que todos
los elementos, partes y componentes del misil Cóndor II, en todas sus versiones y etapas de
desarrollo, que existan a la fecha, serán desactivados, desmantelados, reconvertidos y/o
inutilizados según sus posibilidades de uso en aplicaciones y destinos pacíficos, de manera de
efectivizar en forma fehaciente y definitiva la cancelación completa e irreversible del proyecto
respectivo, transfiriéndose el personal científico, instalaciones y materiales involucrados a la nueva
COMISION NACIONAL DE ACTIVIDADES ESPACIALES, (CONAE).

 artículo 9:
 Art. 9.- Comuníquese, publíquese, dése a la Dirección Nacional del Registro Oficial y archívese.

 FIRMANTES
 MENEM - GONZALEZ - DI TELLA - CAVALLO

EXHIBIT C

# EXHIBIT D

SPACEX NEWS       MULTIMEDIA GALLERY (/MEDIA)       LAUNCH MANIFEST

# LAUNCH MANIFEST

Our launch manifest is populated by a diverse customer base, including space station resupply missions, commercial satellite launch missions, and US government science and national security missions.

FUTURE MISSIONS

COMPLETED MISSIONS

| (HT | (HT | (HT |
|---|---|---|
| TP:/ | TPS | TPS |
| /W | ://T | ://P |
| WW | WIT | LUS |
| .FA | TER | .GO |
| CEB | .CO | OG |
| OO | M/I | LE. |
| K.C | NTE | CO |
| OM | NT/ | M/S |
| /SH | TW | HA |
| AR | EET | RE? |
| ER/ | ? | URL |
| SH | URL | =HT |
| AR | =HT | TP% |
| ER. | TP% | 3A |
| PH | 3A | %2F |
| P? | %2F | %2F |
| U= | %2F | WW |
| HTT | WW | W.S |
| P%3 | W.S | PA |
| A%2 | PA | CEX |
| F%2 | CEX | .CO |
| FW | .CO | M% |
| WW | M% | 2F |
| .SP | 2F | MIS |
| AC | MIS | SIO |
| EX. | SIO | NS) |
| CO | NS) | |
| M% | | |
| 2F | | |
| MIS | | |
| SIO | | |
| NS | | |
| &T= | | |
| LAU | | |
| NC | | |
| H | | |
| MA | | |
| NIF | | |
| EST | | |
| | | | |
| SPA | | |
| CEX | | |
| ) | | |

# FUTURE MISSIONS

| YEAR* | CUSTOMER | LAUNCH | VEHICLE |
|---|---|---|---|
| **2014** | | | |
| 2014 | NASA RESUPPLY TO ISS – FLIGHT 3 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| **2014** | | | |
| 2014 | ORBCOMM | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2014 | FALCON HEAVY DEMO FLIGHT | VANDENBERG | FALCON HEAVY (/FALCON-HEAVY) |
| 2014 | ASIASAT | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2014 | ASIASAT | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2014 | NASA RESUPPLY TO ISS – FLIGHT 4 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2014 | ORBCOMM | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2014 | NASA RESUPPLY TO ISS – FLIGHT 5 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2014 | NASA RESUPPLY TO ISS – FLIGHT 6 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2014 | SPACE SYSTEMS/LORAL | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2014 | THALES ALENIA SPACE (TURKMENISTAN) | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2014 | DSCOVR (USAF) | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2014 | CONAE (ARGENTINA) | VANDENBERG | FALCON 9 (/FALCON9) |
| 2014 | ASIA BROADCAST SATELLITE/SATMEX | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| **2015** | | | |

| | | | |
|---|---|---|---|
| 2015 | JASON-3 FOR NASA | VANDENBERG | FALCON 9 (/FALCON9) |
| 2015 | NASA RESUPPLY TO ISS – FLIGHT 7 | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2015 | NSPO (TAIWAN) | VANDENBERG | FALCON 9 (/FALCON9) |
| 2015 | SPACECOM (ISRAEL) | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2015 | NASA RESUPPLY TO ISS – FLIGHT 8 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2015 | NASA RESUPPLY TO ISS – FLIGHT 9 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2015 | NASA RESUPPLY TO ISS – FLIGHT 10 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2015 | BIGELOW AEROSPACE | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2015 | SES (EUROPE) | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2015 | CONAE (ARGENTINA) | VANDENBERG | FALCON 9 (/FALCON9) |
| 2015 | IRIDIUM – FLIGHT 1 | VANDENBERG | FALCON 9 (/FALCON9) |
| 2015 | IRIDIUM – FLIGHT 2 | VANDENBERG | FALCON 9 (/FALCON9) |
| 2015 | STP-2 US AIR FORCE | CAPE CANAVERAL | FALCON HEAVY (/FALCON-HEAVY) |
| 2015 | ASIA BROADCAST SATELLITE/SATMEX | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| **2016** | | | |
| 2016 | NASA RESUPPLY TO ISS – FLIGHT 11 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2016 | NASA RESUPPLY TO ISS – FLIGHT 12 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2016 | IRIDIUM – FLIGHT 3 | VANDENBERG | FALCON 9 (/FALCON9) |
| 2016 | DRAGONLAB MISSION 1 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2016 | IRIDIUM – FLIGHT 4 | VANDENBERG | FALCON 9 (/FALCON9) |
| 2016 | IRIDIUM – FLIGHT 5 | VANDENBERG | FALCON 9 (/FALCON9) |

**2017**

| 2017 | IRIDIUM – FLIGHT 6 | VANDENBERG | FALCON 9 (/FALCON9) |
| 2017 | IRIDIUM – FLIGHT 7 | VANDENBERG | FALCON 9 (/FALCON9) |
| 2017 | INTELSAT | CAPE CANAVERAL | FALCON HEAVY (/FALCON-HEAVY) |

**2018**

| 2018 | DRAGONLAB MISSION 2 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |

*Year indicates vehicle arrival at launch site.

# COMPLETED MISSIONS

| LAUNCH | CUSTOMER | LAUNCH SITE | VEHICLE |
|---|---|---|---|
| 2013 | THAICOM (THAILAND) | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2013 | SES (EUROPE) | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2013 | MDA CORP. (CANADA) | VANDENBERG | FALCON 9 (/FALCON9) |
| 2013 | NASA RESUPPLY TO ISS – FLIGHT 2 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2012 | NASA RESUPPLY TO ISS - FLIGHT 1 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2012 | NASA COTS - DEMO 2/3 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2010 | NASA COTS - DEMO 1 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2010 | FALCON 9 INAUGURAL TEST FLIGHT | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2009 | ATSB (MALAYSIA) | KWAJALEIN | FALCON 1 |
| 2008 | FALCON 1 FLIGHT 4 | KWAJALEIN | FALCON 1 |
| 2008 | US GOVERNMENT, ATSB AND NASA | KWAJALEIN | FALCON 1 |

NASA

| 2007 | DEMOFLIGHT 2 | KWAJALEIN | FALCON 1 |
| 2006 | DEMOFLIGHT 1 | KWAJALEIN | FALCON 1 |

FOLLOW SPACEX   |

FACEBOOK (HTTPS://WWW.FACEBOOK.COM/SPACEX)
GOOGLE+ (HTTPS://PLUS.GOOGLE.COM/+SPACEX)
TWITTER (HTTPS://TWITTER.COM/SPACEX)
YOUTUBE (HTTP://WWW.YOUTUBE.COM/SPACEX)

© 2013 SPACE EXPLORATION TECHNOLOGIES CORP.

# EXHIBIT E

October 2013

# AEROSPACE
## AMERICA

SpaceX's
expanding
launch
manifest

China's growing military might
Servicing satellites in space

A PUBLICATION OF THE AMERICAN INSTITUTE OF AERONAUTICS AND ASTRONAUTICS



# AEROSPACE
## A M E R I C A

*October 2013*

## DEPARTMENTS

**COMMENTARY** — 3
Russian rocket engines forever?

**INTERNATIONAL BEAT** — 4
Business aviation: Contraction, then recovery.

**WASHINGTON WATCH** — 6
Governing in spite of gridlock.

**CONVERSATIONS** — 8
With Loren Thompson.

**SPACE UPDATE** — 12
Space station repair: How it's done.

**ENGINEERING NOTEBOOK** — 16
Space science GOLD: A payload trend?

**OUT OF THE PAST** — 42

**CAREER OPPORTUNITIES** — 44

## FEATURES

**CHINA'S GROWING MILITARY MIGHT** — 20
China's continuing military modernization is strengthening its ability to wage war in new and expanding areas including cyberspace.
*by James W. Canan*

**NEO THREATS: HOMELAND SECURITY FOR PLANET EARTH** — 28
Detecting celestial bodies and deflecting them from orbits that cross ours will take technology and international cooperation.
*by Leonard David*

**SERVICING SATELLITES IN SPACE** — 36
Despite complex challenges, the U.S. and several other countries are pursuing the use of robots for on-orbit satellite servicing.
*by Marc Selinger*

## BULLETIN

AIAA Meeting Schedule — B2
AIAA Courses and Training Program — B4
AIAA News — B5



Page 6

Page 16

Page 20

Page 28

Page 36

### COVER
A Falcon 9 rocket leaves the hangar at Cape Canaveral, prior to lofting a Dragon capsule toward the ISS. Read all about the Falcon's remarkable record by turning to page 12. Photo courtesy SpaceX.

Aerospace America (ISSN 0740-722X) is published monthly, except August, by the American Institute of Aeronautics and Astronautics, Inc. at 1801 Alexander Bell Drive, Reston, Va. 20191-4344 [703/264-7500]. Subscription rate is 50% of dues for AIAA members (and is not deductible therefrom). Nonmember subscription price: U.S. and Canada, $163, foreign, $200. Single copies $20 each. **Postmaster: Send address changes and subscription orders to address above, attention AIAA Customer Service, 703/264-7500.** Periodical postage paid at Herndon, VA, and at additional mailing offices. Copyright ©2013 by the American Institute of Aeronautics and Astronautics, Inc., all rights reserved. The name Aerospace America is registered by the AIAA in the U.S. Patent and Trademark Office. 40,000 copies of this issue printed. This is Volume 51, No. 9.

# Space *Update*



# SpaceX's expanding launch manifest

IT IS HARD TO FIND ANOTHER SPACE launch services company with as diverse a customer base as Space Exploration Technologies (SpaceX), because there simply is none. No other company even comes close. Founded only a dozen years ago by Elon Musk, SpaceX has managed to win launch contracts from agencies, companies, consortiums, laboratories, and universities in the U.S., Argentina, Brazil, Canada, China, Germany, Malaysia, Mexico, Peru, Taiwan, Thailand, Turkmenistan, and the Netherlands in a relatively short period. Moreover, it has done so within four completely different markets—civil, commercial, military, and university/nonprofit.

SpaceX has used two different rocket models thus far—Falcon 1 and Falcon 9 v.1.0—and at press time was preparing for the maiden launch of its Falcon 9 v.1.1 in September. That mission is for the Canadian Space Agency and several universities in the U.S., including Cornell, Drexel, Stanford, the University of Colorado at Boulder, and Utah State.

The company is also completing development of Falcon Heavy, which may become the nation's most powerful rocket since Apollo's Saturn V when it is ready for its first launch, sometime in 2015.

So far the company has launched satellites only to LEO. However, it was planning to send its first commercial communications spacecraft, the SES-8 for SES World Skies, to geostationary orbit in September, and its second to GEO, the Thaicom 6 for Shin Satellite, aboard a Falcon 9 v.1.1 this month.

At least seven more GEO comsats are scheduled to go up on v.1.1s during the next two years, including ABS 2A and 3A for Asia Broadcast Satellite of China, Asiasat 6 and 8 for Asia Satellite Telecommunications of China, Satmex 7 and 9 for Satelites Mexicanos of Mexico, the Star One C5 for Star One of Brazil, and the Turkmensat 1 for the Ministry of Communications of Turkmenistan.

## A new market

The move to begin launching to GEO is significant, because it opens up an entirely new and potentially lucrative market for SpaceX. It also puts the company into direct competition with commercial launch heavy hitters Arianespace of Europe with its Ariane 5ECA, U.S.-Russian joint venture International Launch Services with its Proton M, and Sea Launch of Russia with its Zenit 3SL and 3SLB.

Still, SpaceX does not seem to be giving up its LEO market. If anything, it is expanding it. Its manifest is packed with more than two dozen micro, nano, pico, and femto (under 1 kg) satellites, but it is also filled with over 100 small spacecraft, including 16 Orbcomm-NG mobile comsats for Orbcomm of Rochelle Park, New Jersey, and 70 Iridium-NEXT mobile comsats for Iridium Communications.

Most launch companies would be ecstatic with just the Iridium and Orbcomm business, or either. These programs not only contain an awful lot of satellites but are also the kind that just keep on giving, because of the need for replacement spacecraft every few years. But keep in mind that this is in *addition* to an already healthy number of GEO comsat launch orders.

## Ending the myth

Perhaps the most intriguing thing about SpaceX's satellite launch activities is that they are not even its 'core' business. The company has made a name for itself not primarily for launching satellites, but rather for being the first private company to launch resupply capsules to the ISS. Before SpaceX's unmanned Dragon capsule maneuvered in LEO and successfully linked up with the ISS on May 25, 2012, the space docking feat had been performed only by governments—the U.S., Russia, and China.

The SpaceX docking debunked the myth that has prevailed since the launch of Sputnik in 1957, that space travel can be undertaken only by national governments because of the prohibitive costs and technological challenges involved.

Teal Group believes it is that mythology that has helped discourage more private investment in commercial spaceflight and the more robust growth and development of the space market. We sense this is now changing.

SpaceX has hauled supplies—food, water, equipment, and experiments—to ISS twice since the initial docking, and its next resupply mission is scheduled for January 15, 2014. It has created a new commercial space resupply service that could eventually evolve to become an industry. For now, the company is merely providing a little competition for the Russians and their Soyuz and Progress capsules, fulfilling its obligations under its commercial resupply services (CRS) contract to NASA.

Soon SpaceX will be joined by Orbital Sciences and its Cygnus capsule, which it has been developing under a commercial orbital transportation services contract to NASA. Orbital is preparing to start launching Cygnus aboard Antares rockets in December under an eight-mission CRS contract.

SpaceX has 10 more Dragon ISS resupply missions remaining on its CRS contract with NASA. It is proceeding with development of a human-rated capsule known as DragonRider, capable of transporting a crew of up to seven astronauts. Plans call for launching the first crewed Dragon-Rider by 2015, although we suspect it will be closer to 2017. This work is being done under NASA's Commercial Crew Development 2 program.

SpaceX envisions eventually mating an unmanned Dragon with its Falcon Heavy and sending missions to orbit the Moon. It then hopes ultimately to launch a manned Dragon-Rider to land on the lunar surface by 2020. The company would like to send a series of relatively low-cost Red Dragon landers (based on the Dragon capsule) to Mars, launching them on Falcon Heavies. Yes, the ultimate goal is to send humans to Mars—not astronauts to plant the flag, but settlers to establish a colony.

### Against all odds

It sounds like pie in the sky. But this has been heard so often when it comes to SpaceX, and consistently the company has overcome tremendous obstacles and proven the mainstream space establishment wrong. SpaceX failed on its first three launch attempts with its Falcon 1, and it simply persisted until it got it right. After the third failure on August 2, 2008, there was strong speculation that the company would have to call it quits. Musk had deep pockets, but he could not endlessly keep financing what appeared to be a losing venture. It was thought that in six months to a year he would



*SpaceX became the first private company to launch resupply capsules to the ISS, with its unmanned Dragon capsule.*

either try another launch or announce that he was closing shop.

What was not expected was that SpaceX would attempt another launch within less than two months. On September 28, 2008, the company completed its first successful Falcon 1 mission, carrying the 165-kg Ratsat demonstration satellite.

In many ways, SpaceX is reminiscent of the U.S. government during the late 1950s and the early 1960s, when so many of its rockets kept blowing up, and it just kept trying until it managed to launch its astronauts to the Moon. The Russians still operate that way. Whenever one of their Proton rockets fails, they launch again within a few months. It is an aggressiveness that some in the space industry may feel is irresponsible. However, it is an attitude that is probably required if you plan to be doing things like sending humans to the Moon and Mars in timeframes of 10 years or less.



*Falcon 9 was scheduled to begin launches to GEO in September.*

*Space* Update

## SPACEX MANIFEST (to LEO unless noted)

| Date Launched | Launcher | Customer | Country | Payload | Mass (kg) |
|---|---|---|---|---|---|
| 03/24/06 | Falcon 1* | Air Force Academy | U.S. | FalconSat 2 | 19.5 |
| 03/20/07 | Falcon 1* | NASA/DARPA | U.S. | LCT2/AFSS | 150 |
| 08/02/08 | Falcon 1* | MDA | U.S. | Trailblazer | 83.5 |
| | | NASA ARC | U.S. | Nanosail-D | 4 |
| | | NASA ARC | U.S. | PREsat | 4 |
| | | Space Services | U.S. | Celestis 7 | 1 |
| 09/28/08 | Falcon 1 | SpaceX | U.S. | Ratsat | 165 |
| 07/14/09 | Falcon 1 | Astronautic Technology | Malaysia | RazakSAT | 180 |
| 06/04/10 | Falcon 9 v.1.0 | SpaceX | U.S. | Dragon (qual) | < 4,200 |
| 08/12/10 | Falcon 9 v.1.0 | SpaceX | U.S. | Dragon C1 | < 4,900 |
| | | Northrop Grumman/USC | U.S. | Mayflower-Caerus | 5 |
| | | NRO | U.S. | QbX 1, 2 | 5 |
| | | Army SMDC | U.S. | SMDC-ONE 1 | 4 |
| | | Los Alamos National Lab | U.S. | Perseus 000 - 003 | 1.5 |
| 05/22/12 | Falcon 9 v.1.0 | SpaceX | U.S. | Dragon C2 | 6,650 |
| 08/10/12 | Falcon 9 v.1.0 | NASA | U.S. | Dragon CRS-1 | 6,650 |
| | | Orbcomm | U.S. | Orbcomm-NG 1 | 142 |
| 01/13/13 | Falcon 9 v.1.0 | NASA | U.S. | Dragon CRS-2 | 6,650 |
| **Planned** | | | | | |
| 09/13 | Falcon 9 v.1.1 | SES World Skies | Netherlands | SES-8** | 3,200 |
| 09/13 | Falcon 9 v.1.1 | Canadian Space Agency | Canada | Cassiope 1*** | 375 |
| | | University of Colorado | U.S. | DANDE | 50 |
| | | Cornell University | U.S. | CUSat 1, 2 | 1 |
| | | Drexel (and other univs.) | U.S. | POPACS 1 | 1 |
| | | Drexel (and other univs.) | U.S. | POPACS 2 | 1.5 |
| | | Drexel (and other univs.) | U.S. | POPACS 3 | 2 |
| | | Stanford University | U.S. | SNAPS | 0.5 |
| 10/13 | Falcon 9 v.1.1 | Shin Satellite | Thailand | Thaicom 6** | 3,325 |
| 11/13 | Falcon 9 v.1.1 | Orbcomm | U.S. | Orbcomm-NG 2 - 9 | 142 |
| 01/15/14 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-3 | – |
| | | University of Hawaii | U.S. | Ho'oponopono 2 | 3.5 |
| | | NASA Goddard | U.S. | TechCube 1 | 3 |
| | | Montana Space Grant Consortium | U.S. | FIREBIRD A | 2 |
| | | California Inst. of Technology | U.S. | LMRSat | 2 |
| | | Colorado Space Grant Consortium | U.S. | ALL-STAR/THEIA | 1 |
| | | Colorado Space Grant Consortium | U.S. | Hermes 2 | 1 |
| | | City University of New York | U.S. | CUNYSAT 1 | 1 |
| 04/06/14 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-4 | – |
| | | NRL | U.S. | Spinsat | 55 |
| 2014 | Falcon 9 v.1.1 | Asia Satellite Telecommunications | China | Asiasat 6** | 3,813 |
| 2014 | Falcon 9 v.1.1 | Asia Satellite Telecommunications | China | Asiasat 8** | 3,813 |
| 2014 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-5 | – |
| 2014 | Falcon 9 v.1.1 | Army SMDC | U.S. | Kestrel Eye 1 | 14 |
| | | NASA JPL | U.S. | IPEX | 1 |

Otherwise, people and investors lose interest, and the costs of such programs grow out of control, thereby decreasing their odds of completion.

In spite of Musk's bold, seemingly outrageous ideas and predictions, it is getting harder and harder to bet against SpaceX. Just look at the company's launch manifest. It is impressive in terms of both length and diversity, not to mention that it was built up within a few short years. The company has not been around very long. Founded in 2002, it has been launch-

ing since only 2006. Its first successful launch did not occur until late 2008, yet it has something on the order of 30-40 flights scheduled over the next five years—depending on how payloads are configured. It certainly sounds like a serious business venture.

The only mildly weak area in SpaceX's manifest is the military side. Falcon rockets have launched only six satellites for the Dept. of Defense, including two for the NRO; one for the Air Force Academy; one for the Army Space and Missile Defense Command

(SMDC); one for DARPA; and one for the Missile Defense Agency. All of these spacecraft have been small or tiny, and none could be called critical to national security. They were all technology development satellites—the Pentagon was searching for a cheap ride to space, and SpaceX was glad to provide it.

There are only nine military satellites in the manifest. They include the DSCOVR Earth observation STP-2 ISAT technology satellites for the Air Force, the DSX technology satellite for the

| Date Launched | Launcher | Customer | Country | Payload | Mass (kg) |
|---|---|---|---|---|---|
| 2014 | Falcon 9 v.1.1 | Orbcomm | U.S. | Orbcomm-NG 10 - 18 | 142 |
| 2014 | Falcon 9 v.1.1 | Satelites Mexicanos | Mexico | Satmex 7** | 5,600 |
| | | Asia Broadcast Satellite | China | ABS 3A** | 1,800 |
| 10/20/14 | Falcon 9 v.1.1 | Ministry of Communications | Turkmenistan | Turkmensat 1** | 4,500 |
| 11/15/14 | Falcon 9 v.1.1 | Air Force | U.S. | DSCOVR | 440**** |
| | | SpaceX | U.S. | SHERPA (demo) | – |
| | | NASA | U.S. | Sunjammer | < 50 |
| 12/05/14 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-6 | – |
| | | NASA | U.S. | SAGE III | 76 |
| 12/30/14 | Falcon 9 v.1.1 | Star One | Brazil | Star One C5** | 4,680 |
| 03/01/15 | | NASA | U.S. | Jason 3 | 553 |
| 03/03/15 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-7 | – |
| 06/01/15 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-8 | – |
| | | Bigelow Aerospace | U.S. | BEAM | 1,360 |
| 2015 | Falcon 9 v.1.1 | Satelites Mexicanos | Mexico | Satmex 9** | 5,600 |
| | | Asia Broadcast Satellite | China | ABS 2A** | 1,800 |
| 2015 | Falcon 9 v.1.1 | CONAE | Argentina | SAOCOM 1A | 900 |
| | | Astronautic Technology | Malaysia | D-Sat | < 25 |
| | | Alas Peruanas University | Peru | UAPSat | 1 |
| 2015 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-9 | – |
| | | | U.S. | IDA 2 | – |
| 2015 | Falcon Heavy | AFRL | U.S. | DSX | 600 |
| | | NRO | Taiwan | Formosat-7A – 7L | 217 |
| 2015 | Falcon 9 v.1.1 | Iridium Satellite | U.S. | Iridium-NEXT 3 - 22 | 800 |
| 2015 | Falcon 9 v.1.1 | Air Force | U.S. | STP-2 ISAT | 5,000 |
| 2015 | Falcon 1e | NRL | U.S. | TacSat-1A | 110 |
| 12/15 | Falcon 9 v.1.1 | SpaceX | U.S. | SHERPA 1 | – |
| 01/05/16 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-10 | – |
| 04/05/16 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-11 | – |
| | | | U.S. | OCO 3 | 550 |
| 2016 | Falcon 1e | GeoOptics | U.S. | Cicero 1 - 6 | 30 |
| 2016 | Falcon 9 v.1.1 | SpaceX | U.S. | DragonLab 1 | – |
| 2016 | Falcon 9 v.1.1 | Iridium Satellite | U.S. | Iridium-NEXT 23 - 62 | 800 |
| 08/08/16 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-12 | – |
| 2016 | Falcon 9 v.1.1 | SpaceX | U.S. | DragonLab 2 | – |
| 2016 | Falcon 9 v.1.1 | CONAE | Argentina | SAOCOM 1B | 900 |
| 2016 | Falcon 9 v.1.1 | SpaceX | U.S. | SHERPA 2 | – |
| 2017 | Falcon 9 v.1.1 | SpaceX | U.S. | DragonRider | – |
| 2017 | Falcon 9 v.1.1 | Iridium Satellite | U.S. | Iridium-NEXT 63 - 72 | 800 |
| 2017 | Falcon 9 v.1.1 | SpaceX | U.S. | SHERPA 3 | – |
| 2018 | Falcon 9 v.1.1 | CSA | Canada | RCM 1 - 3 | 1,300 |
| 2018 | Falcon 9 v.1.1 | Bundeswehr | Germany | SARah Aktiv 1 | 2,200 |
| 2018 | Falcon 9 v.1.1 | B612 Foundation | U.S. | Sentinel Telescope | 1,500 |
| 2019 | Falcon 9 v.1.1 | Bundeswehr | Germany | SARah Passiv 1, 2 | 1,800 |

*Launch failure.    **GEO.    ***Elliptical.    ****Lagrange point 1 ($L_1$).

AFRL, the Kestrel Eye 1 tactical imaging satellite for the Army SMDC, three SARah radar imaging satellites for the German Armed Forces (Bundeswehr), and the Spinsat technology demonstration and TacSat-1A maritime surveillance experimental satellites for the Naval Research Laboratory.

Within a few years, though, SpaceX may be winning its share of launches under the Air Force's Evolved Expendable Launch Vehicle program, which has been the exclusive domain of United Launch Alliance, a Boeing/ Lockheed Martin joint venture, for several years. Once SpaceX's Falcon Heavy is certified by the Air Force, it is likely to be selected for at least 14 of the next 50 EELV missions contracted. The prices for Falcon 9 v.1.1 and Falcon Heavy, estimated at nearly half the price of the Atlas Vs and Delta IVs, are going to be attractive to the Air Force, which has long been seeking to reduce its launch costs dramatically—ever since the days of the $350-million-per-mission Titan IV rocket.

Next to cargo resupply work for NASA, Musk views competing head to head with Boeing and Lockheed Martin for EELV contracts as his top priority. Last year the Air Force awarded SpaceX two EELV-class payloads—DSCOVR and STP-2 ISAT. That was the first time a company besides Boeing or Lockheed Martin was allowed into EELV. SpaceX has opened another door for itself, and one that is sure to add noticeably to its manifest.

**Marco Cáceres**
Teal Group
mcaceres@tealgroup.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Stephen V. Wilson_____ and the assigned Magistrate Judge is _____Charles F. Eick_____ .

The case number on all documents filed with the Court should read as follows:

## 2:14-cv-02262-SVW(Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____March 25, 2014_____
Date

By  APEDRO _____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| [x] Western Division | [ ] Southern Division | [ ] Eastern Division |
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

|  |  |
|---|---|
| NML CAPITAL, LTD., | ) |
|  | ) |
|  | ) |
|  | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| SPACE EXPLORATION TECHNOLOGIES CORP., aka SPACEX, a Delaware corporation; THE REPUBLIC OF ARGENTINA, a foreign state, including its Comisión Nacional de Actividades Espaciales, aka CONAE, a political subdivision of the Argentine State; and DOES 1-10 | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No. **CV14-02262 - SVW (Ex)**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   SPACE EXPLORATION TECHNOLOGIES CORP. aka SPACEX
1 Rocket Road
Hawthorne, California  90250

THE REPUBLIC OF ARGENTINA, a foreign state, including its
Comisión Nacional de Actividades Espaciales, aka CONAE
Buenos Aires, Argentina

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   QUINN EMANUEL URQUHART & SULLIVAN, LLP
Harold A. Barza (SB# 80888)
Bruce E. Van Dalsem (SB# 124128)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Tel:  (213) 443-3000; Fax:  (213) 443-3100

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

**ANDRES PEDRO**

Date:  MAR 2 5 2014   _____
*Signature of Clerk or Deputy Clerk*

1202

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                              *Server's signature*

                                        _____
                                              *Printed name and title*

                                        _____
                                              *Server's address*

Additional information regarding attempted service, etc:

 COPY

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself [ ] )

NML CAPITAL, LTD.

**DEFENDANTS** ( Check box if you are representing yourself [ ] )

SPACE EXPLORATION TECHNOLOGIES CORP., aka SPACEX, a Delaware corporation; THE REPUBLIC OF ARGENTINA, a foreign state, including its COMISIÓN NACIONAL DE ACTIVIDADES ESPACIALES, aka CONAE, a political subdivision of the Argentine State; and DOES 1-10

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

[ ] 1. U.S. Government Plaintiff

[X] 3. Federal Question (U.S. Government Not a Party)

[ ] 2. U.S. Government Defendant

[ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in this State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. ORIGIN** (Place an X in one box only.)

[X] 1. Original Proceeding

[ ] 2. Removed from State Court

[ ] 3. Remanded from Appellate Court

[ ] 4. Reinstated or Reopened

[ ] 5. Transferred from Another District (Specify)

[ ] 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** [ ] Yes [X] No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** [ ] Yes [X] No      [ ] MONEY DEMANDED IN COMPLAINT: $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Creditor's Suit: F.R.C.P., Rule 69, Execution and Cal. C.C.P., Section 708.210. This action is to have certain property in possession of defendant, Space Exploration Technologies Corp., applied to the satisfaction of two money judgments that NML has obtained against defendant Republic of Argentina.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| [ ] 375 False Claims Act | [ ] 110 Insurance | [ ] 240 Torts to Land | [ ] 462 Naturalization Application | **Habeas Corpus:** | [ ] 820 Copyrights |
| [ ] 400 State Reapportionment | [ ] 120 Marine | [ ] 245 Tort Product Liability | [ ] 465 Other Immigration Actions | [ ] 463 Alien Detainee | [ ] 830 Patent |
| [ ] 410 Antitrust | [ ] 130 Miller Act | [ ] 290 All Other Real Property | | [ ] 510 Motions to Vacate Sentence | [ ] 840 Trademark |
| [ ] 430 Banks and Banking | [ ] 140 Negotiable Instrument | **TORTS** | **TORTS** | [ ] 530 General | **SOCIAL SECURITY** |
| [ ] 450 Commerce/ICC Rates/Etc. | [ ] 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | [ ] 535 Death Penalty | [ ] 861 HIA (1395ff) |
| [ ] 460 Deportation | | [ ] 310 Airplane | [ ] 370 Other Fraud | **Other:** | [ ] 862 Black Lung (923) |
| [ ] 470 Racketeer Influenced & Corrupt Org. | [ ] 151 Medicare Act | [ ] 315 Airplane Product Liability | [ ] 371 Truth in Lending | [ ] 540 Mandamus/Other | [ ] 863 DIWC/DIWW (405 (g)) |
| [ ] 480 Consumer Credit | [ ] 152 Recovery of Defaulted Student Loan (Excl. Vet.) | [ ] 320 Assault, Libel & Slander | [ ] 380 Other Personal Property Damage | [ ] 550 Civil Rights | [ ] 864 SSID Title XVI |
| [ ] 490 Cable/Sat TV | | [ ] 330 Fed. Employers' Liability | [ ] 385 Property Damage Product Liability | [ ] 555 Prison Condition | [ ] 865 RSI (405 (g)) |
| [ ] 850 Securities/Commodities/Exchange | [ ] 153 Recovery of Overpayment of Vet. Benefits | [ ] 340 Marine | **BANKRUPTCY** | [ ] 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| [X] 890 Other Statutory Actions | [ ] 160 Stockholders' Suits | [ ] 345 Marine Product Liability | [ ] 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| [ ] 891 Agricultural Acts | [ ] 190 Other Contract | [ ] 350 Motor Vehicle | [ ] 423 Withdrawal 28 USC 157 | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 871 IRS-Third Party 26 USC 7609 |
| [ ] 893 Environmental Matters | [ ] 195 Contract Product Liability | [ ] 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | [ ] 690 Other | |
| [ ] 895 Freedom of Info. Act | [ ] 196 Franchise | [ ] 360 Other Personal Injury | [ ] 440 Other Civil Rights | **LABOR** | |
| [ ] 896 Arbitration | **REAL PROPERTY** | [ ] 362 Personal Injury-Med Malpractice | [ ] 441 Voting | [ ] 710 Fair Labor Standards Act | |
| [ ] 899 Admin. Procedures Act/Review of Appeal of Agency Decision | [ ] 210 Land Condemnation | [ ] 365 Personal Injury-Product Liability | [ ] 442 Employment | [ ] 720 Labor/Mgmt. Relations | |
| | [ ] 220 Foreclosure | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | [ ] 443 Housing/ Accommodations | [ ] 740 Railway Labor Act | |
| [ ] 950 Constitutionality of State Statutes | [ ] 230 Rent Lease & Ejectment | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 445 American with Disabilities-Employment | [ ] 751 Family and Medical Leave Act | |
| | | | [ ] 446 American with Disabilities-Other | [ ] 790 Other Labor Litigation | |
| | | | [ ] 448 Education | [ ] 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**  Case Number:  CV14-02262

CV-71 (11/13)                    CIVIL COVER SHEET                    Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes  [X] No<br><br>If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Los Angeles | Western |
| | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | **A PLAINTIFF?**<br>Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?**<br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| [ ] Yes  [X] No<br><br>If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Los Angeles | [ ] Los Angeles | Western |
| | [ ] Ventura, Santa Barbara, or San Luis Obispo | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | [ ] Riverside or San Bernardino | Eastern |
| | [ ] Other | [ ] Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | [ ] | [ ] | [ ] | [ ] | [ ] | [X] |
| Indicate the location in which a majority of defendants reside: | [ ] | [ ] | [ ] | [ ] | [ ] | [X] |
| Indicate the location in which a majority of claims arose: | [ ] | [ ] | [ ] | [ ] | [ ] | [X] |

| **C.1.  Is either of the following true? If so, check the one that applies:** | **C.2.  Is either of the following true? If so, check the one that applies:** |
|---|---|
| [ ] 2 or more answers in Column C | [ ] 2 or more answers in Column D |
| [ ] only 1 answer in Column C and no answers in Column D | [ ] only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question D, below.<br><br>If none applies, answer question C2 to the right. ➡ | Your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question D, below.<br><br>If none applies, go to the box below. ⬇ |

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | **WESTERN DIVISION** |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?  ☒ NO   ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?  ☒* NO   ☐ YES

*Plaintiff does not believe this case is related to two prior dismissed cases, but in an abundance of caution, Plaintiff has filed
If yes, list case number(s):   a notice of related case herewith identifying Case Nos. CV-11-03507-SJO (RZx) and CV-11-3970-SJO (RZx).

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**                                          DATE: 3/25/14

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |