1   DONALD R. BROWN (Bar No. CA 156548)
    E-mail: dbrown@manatt.com
2   CARL L. GRUMER (Bar No. CA 066045)
    E-mail: cgrumer@manatt.com
3   MANATT, PHELPS & PHILLIPS, LLP
    11355 West Olympic Boulevard
4   Los Angeles, CA 90064-1614
    Telephone: (310) 312-4000
5   Facsimile: (310) 312-4224

6   JONATHAN I. BLACKMAN (*Pro Hac Vice* to be filed)
    E-mail: jblackman@cgsh.com
7   CARMINE D. BOCCUZZI (*Pro Hac Vice* to be filed)
    E-mail: cboccuzzi@cgsh.com
8   MICHAEL M. BRENNAN (*Pro Hac Vice* to be filed)
    E-mail: mbrennan@cgsh.com
9   CLEARY GOTTLIEB STEEN & HAMILTON LLP
    One Liberty Plaza
10  New York, NY 10006
    Telephone: (212) 225-2000
11  Facsimile: (212) 225-3999

12  Attorneys for *Defendant*
    THE REPUBLIC OF ARGENTINA
13

14               UNITED STATES DISTRICT COURT

15                    CENTRAL DISTRICT

16

17  NML CAPITAL, LTD.,                    No. 14 CV 02262-SVW-Ex

18              Plaintiff,                [*Hon. Stephen V. Wilson*]

19       vs.                             **MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN SUPPORT OF
20  SPACE EXPLORATION                    MOTION BY THE REPUBLIC OF
    TECHNOLOGIES CORP., aka              ARGENTINA TO DISMISS
21  SPACEX, a Delaware corporation;      COMPLAINT UNDER F.R.C.P.
    THE REPUBLIC OF ARGENTINA, a         12(b)(1) AND (6)**
22  foreign state, including its *COMISIÓN
    NACIONAL DE ACTIVIDADES              [Filed concurrently with Declarations of
23  ESPACIALES*, aka CONAE, a political   Conrado F. Varotto and Donald R.
    subdivision of the Argentine State; and   Brown]
24  DOES 1-10,
                                         Hearing Date:   June 30, 2014
25              Defendants.              Time:           1:30 p.m.
                                         Courtroom:      6
26
                                         Compl. filed:   March 25, 2014
27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

312252571.1                                    MEMO. OF Ps AND As IN SUPPORT OF
                                               REP. OF ARGENTINA'S MTN TO DISMISS

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ........................................................................ 1

II.  BACKGROUND ............................................................................................ 3

    A.  The Argentine Crisis and NML's Litigation Campaign Against the Republic ......................................................................................... 3

    B.  NML's Previously Rejected Creditor's Suit Against Property of CONAE ............................................................................................... 4

    C.  The Present Action ............................................................................. 7

III.  ARGUMENT ................................................................................................ 10

    A.  The Complaint Fails to Plausibly Allege that CONAE Is Liable for the Republic's Debts or Otherwise Subject to Jurisdiction Here ................................................................................................... 11

    B.  The Complaint Fails to Plausibly Allege That the Purported Foreign-State Property It Targets Falls Under an Exception to FSIA Immunity .................................................................................. 17

IV.  CONCLUSION ............................................................................................. 22

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

312252571.1

i

MEMO. OF Ps AND As IN SUPPORT OF
REP. OF ARGENTINA'S MTN TO DISMISS

# TABLE OF AUTHORITIES

**Page**

## CASES

*Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*,
475 F.3d 1080 (9th Cir. 2007) ................................................................ passim

*Af-Cap, Inc. v. Republic of Congo*,
462 F.3d 417 (5th Cir. 2006) .......................................................................... 10

*Alperin v. Vatican Bank*,
360 F. App'x 847 (9th Cir. 2009) .................................................................. 14

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989) ........................................................................................ 10

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .................................................................................... 11

*Aurelius Capital Partners, LP v. Republic of Argentina*,
584 F.3d 120 (2d Cir. 2009) .................................................................... 4, 18

*Autotech Techs. LP v. Integral Research & Dev. Corp.*,
499 F.3d 737 (7th Cir. 2007) ........................................................................... 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 10

*California Dep't of Water Res. v. Powerex Corp.*,
533 F.3d 1087 (9th Cir. 2008) ................................................................ 13, 14

*Colella v. Republic of Argentina*,
No. C 07-80084 WHA, 2007 WL 1545204 (N.D. Cal. May 29,
2007) ................................................................................................................ 21

*Compagnie Noga D'Importation Et D'Exportation S.A. v. Russian
Fed'n*,
361 F.3d 676 (2d Cir. 2003) .................................................................... 16, 17

*Conn. Bank of Commerce v. Republic of Congo*,
309 F.3d 240 (5th Cir. 2002) .................................................................... 19, 20

*Dichter-Mad Family Partners, LLP v. United States*,
707 F. Supp. 2d 1016 (C.D. Cal. 2010) *aff'd*, 709 F.3d 749 (9th Cir.
2013) .................................................................................................................. 5

*EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*,
322 F.3d 635 (9th Cir. 2003) .......................................................................... 12

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

312252571.1

ii

MEMO. OF PS AND AS IN SUPPORT OF
REP. OF ARGENTINA'S MTN TO DISMISS

**TABLE OF AUTHORITIES**
(continued)

Page

*EM Ltd. v. Republic of Argentina*, 08 Civ.
7974 (TPG), 2010 WL 3910604 (S.D.N.Y. Sept. 30, 2010)................................4

*EM Ltd. v. Republic of Argentina*,
131 F. App'x 745 (2d Cir. 2005)................................................................4

*EM Ltd. v. Republic of Argentina*,
473 F.3d 463 (2d Cir. 2007), *cert. denied*, 552 U.S. 818 (2007) ........................4

*EM Ltd. v. Republic of Argentina*,
No. 08 Civ. 7974 (TPG), 2009 WL 3149601 (S.D.N.Y. Sept. 30,
2009), *vacated in part on other grounds,* 2010 WL 3910604
(S.D.N.Y. Sept. 30, 2010) ................................................................4, 14

*European Cmty. v. RJR Nabisco, Inc.*,
No. 11-2475-cv, 2014 WL 1613878 (2d Cir. Apr. 29, 2014) ...........................17

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983) .........................................................................passim

*Flatow v. Islamic Republic of Iran*,
308 F.3d 1065 (9th Cir. 2002).......................................................11, 12, 14, 16

*Garb v. Republic of Poland*,
440 F.3d 579 (2d Cir. 2006) ..............................................................passim

*Helman v. Alcoa Global Fasteners, Inc.*,
843 F. Supp. 2d 1038 (C.D. Cal. 2011)...............................................11

*Indep. Towers of Wash. v. Wash.*,
350 F.3d 925 (9th Cir. 2003) ................................................................6

*Lightwater Corp. Ltd. v. Republic of Argentina*,
No. 02 Civ. 3804 (TPG), 2003 WL 1878420 (S.D.N.Y. Apr. 14,
2003)..............................................................................................3

*Ministry of Def. & Support for Armed Forces of the Islamic Republic
of Iran v. Cubic Def. Sys., Inc.*,
495 F.3d 1024 (9th Cir. 2007) *vacated on other grounds*, 546 U.S.
450 (2006)...................................................................................passim

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009).....................................................10-11

*NML Capital, Ltd. v. Republic of Argentina*,
680 F.3d 254 (2d Cir. 2012)................................................................4

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

312252571.1

iii

MEMO. OF PS AND AS IN SUPPORT OF
REP. OF ARGENTINA'S MTN TO DISMISS

# TABLE OF AUTHORITIES
## (continued)

Page

*NML Capital, Ltd. v. Republic of Argentina*,
  09 Civ.7013 (TPG), 2011 WL 524433 (S.D.N.Y. Feb. 15, 2011) .......................4

*NML Capital, Ltd. v. Republic of Argentina*,
  No. 03 Civ. 8845 (TPG), 2011 WL 1533072 (S.D.N.Y. Apr. 22,
  2011)*, vacated on other grounds*, 496 F. App'x 96 (2d Cir. 2012) ....................4

*NML Capital, Ltd. v. Republic of Argentina*,
  No. 04-0197 (CKK), 2005 U.S. Dist. LEXIS 47027 (D.D.C. Aug.
  3, 2005) ...................................................................................................................4

*NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*,
  788 F. Supp. 2d 1111 (C.D. Cal. 2011) ........................................................passim

*Parks Sch. of Business, Inc. v. Symington*,
  51 F.3d 1480 (9th Cir.1995) ....................................................................................5

*Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd.*,
  476 F.3d 140 (2d Cir. 2007) ..................................................................................14

*Peterson v. Islamic Republic of Iran*,
  627 F.3d 1117 (9th Cir. 2010) .........................................................................10, 18

*Republic of Argentina v. Weltover Inc.*,
  504 U.S. 607 (1992) ..............................................................................................19

*Savage v. Glendale Union High Sch.*,
  343 F.3d 1036 (9th Cir. 2003) ................................................................................5

*Seijas v. Republic of Argentina*,
  502 Fed. Appx. 19 (2d Cir. 2012) .........................................................................11

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
  30 F.3d 148 (D.C. Cir. 1994) ...........................................................................15, 16

## STATUTES

28 U.S.C. § 1603(b) ....................................................................................................1, 12

28 U.S.C. § 1603(b)(2) .....................................................................................................13

28 U.S.C. § 1605(a)(2) .....................................................................................................19

28 U.S.C. § 1605(a)(3) .....................................................................................................15

28 U.S.C. § 1608 ...........................................................................................................8, 15

28 U.S.C. § 1608(a)(1)-(4) .................................................................................................8

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

312252571.1

iv

MEMO. OF PS AND AS IN SUPPORT OF
REP. OF ARGENTINA'S MTN TO DISMISS

**TABLE OF AUTHORITIES**
(continued)

Page

28 U.S.C. § 1608(a)(2) ................................................................................. 8

28 U.S.C. § 1609............................................................................................ 2, 10

28 U.S.C. § 1610.................................................................................. 10, 18, 19

28 U.S.C. § 1610(a) ...........................................................................passim

28 U.S.C. § 1610(b) ........................................................................................ 15

C.C.P. § 708.280 .......................................................................................... 10

**OTHER AUTHORITIES**

H.R. Rep. No. 94-1487, at 29-30 (1976), *reprinted in* 1976
    U.S.C.C.A.N. 6604 .................................................................................. 11

Lippert, Jonathan C., Note, *Vulture Funds: The Reason Why
    Congolese Debt May Force a Revision of the Foreign Sovereign
    Immunities Act*, 21 N.Y. Int'l L. Rev. 1, 2, 27 (2008)........................... 3

Pettersson, Edvard, *Argentina Creditor NML Seeks Rights to SpaceX
    Launch Deal*, Bloomberg, Mar. 25, 2014............................................... 8

Press Release, Office of the High Commissioner for Human Rights,
    *'Vulture Funds' – UN expert on foreign debt welcomes landmark
    law to address profiteering* (Apr. 20, 2010)......................................... 3

Republic of Argentina, Annual Report (Form 18-K), at 17 (Oct. 1,
    2010)......................................................................................................... 4

Statement of Interest of the United States of America, *NML Capital,
    Ltd. v. Spaceport Sys. Int'l, L.P.*, No. 11 Civ. 03507 (C.D. Cal. May
    3, 2013)..................................................................................................... 5

**RULES**

Federal Rule of Civil Procedure 12(b)(1)............................................... 1, 5

Federal Rule of Civil Procedure 12(b)(6)................................................... 1

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

312252571.1                    v                    MEMO. OF PS AND AS IN SUPPORT OF
                                                    REP. OF ARGENTINA'S MTN TO DISMISS

Defendant the Republic of Argentina (the "Republic") submits this memorandum of law in support of its motion to dismiss the complaint for creditor's suit filed by plaintiff NML Capital, Ltd. ("NML") on March 25, 2014 (the "Complaint" or "Compl.") against the Republic, including its space agency Comisión Nacional de Actividades Espaciales ("CONAE"), and Space Exploration Technologies Corp. ("SpaceX"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.	PRELIMINARY STATEMENT

NML's present "complaint for creditor's suit" comes less than three years after NML voluntarily dismissed its previous, nearly identical complaint in the wake of this Court's rejection of its many substantially similar arguments that the property of CONAE, the Argentine space agency, could be seized to satisfy debts of the Republic of Argentina. *See NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111 (C.D. Cal. 2011) ("*NML I*"). Like NML's prior complaint, the Complaint here is utterly devoid of plausible allegations that CONAE, a foreign-state agency presumptively separate from the Republic, can be held liable for the obligations of the Republic, let alone that CONAE has property here that is not immune from execution under the Foreign Sovereign Immunities Act ("FSIA") because it is being "used for" a commercial activity in the United States. NML's present action should fare no better.

*First*, the Complaint should be dismissed because it improperly seeks to lay claim to the alleged property of CONAE, an "agency or instrumentality" of the Republic under FSIA Section 1603(b) that is entitled both to its own immunity from the jurisdiction of U.S. courts *and* to a strong presumption of separateness from the Republic. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"). CONAE's property is thus beyond the reach of Argentina's creditors unless and until they rebut that presumption and establish that CONAE is liable for the debts of the Republic as its "alter ego" – a

312252571.1

showing that NML does not even try to make.  NML pleads no facts to support its novel theory that CONAE nonetheless is to be equated with the Republic, nor is NML helped by including in its Complaint citations to inapposite case law involving government ministries and departments that were integrated into the foreign sovereign's structural hierarchy.  No decision holds that a separate, independent legal entity like CONAE is liable for its parent state's debts absent an "alter ego" showing.  Nor could any decision, in light of the Supreme Court's decision in *Bancec*.

Second, and even assuming that CONAE could be deemed liable for the debts of the Republic and subject to jurisdiction, the Complaint fails to plead the existence of CONAE property that is not immune from execution under the FSIA. That statute renders *all* foreign-state property immune from execution unless it is both located in the United States and "used for" a commercial activity in the United States.  28 U.S.C. §§ 1609, 1610(a).  As explained by the Court in *NML I*, CONAE's satellites are not "used for" any activity in the United States; rather, they are used in space, and that use is not commercial but scientific and sovereign in nature.  *See NML I*, 788 F. Supp. 2d at 1122.  Just as in *NML I*, where NML, in trying to identify property that could be subject to execution, repeatedly sought to "recharacterize" and "redefine" the purported property and "commercial activity" at issue, *id.* at 1121, NML now claims that the property it seeks is CONAE's contract rights vis-à-vis SpaceX for satellite-launching services.  But it defies logic, and is utterly contrary to precedent, to argue that contract rights "in connection with" non-commercial activity in the United States could somehow themselves be "used for" a commercial activity.

The Court should dismiss the Complaint.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

312252571.1

2

MEMO. OF PS AND AS IN SUPPORT OF
REP. OF ARGENTINA'S MTN TO DISMISS

## II. BACKGROUND

### A. The Argentine Crisis and NML's Litigation Campaign Against the Republic

NML, a Cayman Islands hedge fund that speculates in defaulted sovereign debt, is a judgment creditor of the Republic. NML acquired beneficial interests in Republic-issued debt at a deep discount both immediately before, and well after, the Republic suspended payments on its unsustainable external debt as a consequence of the worst economic crisis of its modern history, in which it suffered a cumulative fall in output almost twice that experienced by the United States during the Great Depression. *See Lightwater Corp. Ltd. v. Republic of Argentina*, No. 02 Civ. 3804 (TPG), 2003 WL 1878420, at *2 (S.D.N.Y. Apr. 14, 2003). By the end of 2001, this crisis made it impossible for the Republic to service its overwhelming debt burden—some $80 billion in public external debt alone—while maintaining basic governmental services necessary for the health, welfare, and safety of the Argentine populace. Unable to service its debt, the Republic was forced to defer interest and principal payments to debt holders and to seek a voluntary restructuring of its debt burden.

Like other so-called "vulture funds,"[1] NML has sought to take advantage of the absence of bankruptcy protection in the sovereign context by bringing lawsuits against the Republic for the face value of defaulted sovereign debt, obtaining judgments on which interest continues to run indefinitely, and aggressively trying to execute on them, notwithstanding the fact that the FSIA largely renders foreign-state property immune. Following this business strategy, NML refused to

---

[1] *See, e.g.*, Jonathan C. Lippert, Note, *Vulture Funds: The Reason Why Congolese Debt May Force a Revision of the Foreign Sovereign Immunities Act*, 21 N.Y. Int'l L. Rev. 1, 2, 27 (2008) (vulture funds seek "extraordinary profits at the expense of U.S. companies, the U.S. economy and U.S. foreign relations . . . potentially affecting debt restructuring in all emerging markets"); Press Release, Office of the High Commissioner for Human Rights, *'Vulture Funds' – UN expert on foreign debt welcomes landmark law to address profiteering* (Apr. 20, 2010), *available at* http://www.ohchr.org/en/NewsEvents/Pages/DisplayNews.aspx?NewsID=9976&LangID=E (last visited May 15, 2014).

1  participate in the Republic's 2005 and 2010 voluntary, global debt exchange offers,

2  which together resulted in the successful restructuring of approximately 92% of the

3  Republic's non-performing debt.[2]  Instead, NML has pursued improper attachment

4  and execution efforts against assorted separate agencies and instrumentalities of the

5  Republic,[3] as well as property not used for a commercial activity,[4] including clearly

6  immune diplomatic and military property.[5]  These numerous past enforcement

7  efforts include its failed attempt in this Court, in 2011, to execute on CONAE's

8  satellite property.  *NML I*, 788 F. Supp. 2d 1111.

   **B.    NML's Previously Rejected Creditor's Suit Against Property of
           CONAE**

11      CONAE was established "in 1991 through a presidential decree" and, as

12  Argentina's space agency, is "obligated 'to undertake, design, execute, control,

---

[2] *See* Republic of Argentina, Annual Report (Form 18-K), at 17 (Oct. 1, 2010), *available at* http://sec.gov/Archives/edgar/data/914021/ 000090342310000550/roa-18k_0927.htm; *see also EM Ltd. v. Republic of Argentina*, 131 F. App'x 745, 746-47 (2d Cir. 2005) (affirming vacatur of NML attachment of beneficial interests in bonds tendered in 2005 exchange offer).

[3] *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 472 (2d Cir. 2007) (affirming vacatur of attachment of central bank reserves at the Federal Reserve Bank of New York), *cert. denied*, 552 U.S. 818 (2007); *NML Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845 (TPG), 2011 WL 1533072, at *6 (S.D.N.Y. Apr. 22, 2011) (denying attachment because, *inter alia*, the property belonged to wholly government-owned Argentine satellite company) *vacated on other grounds*, 496 F. App'x 96 (2d Cir. 2012); *NML Capital, Ltd. v. Republic of Argentina*, 09 Civ.7013 (TPG), 2011 WL 524433, at *8 (S.D.N.Y. Feb. 15, 2011) (dismissing complaint against energy company majority-owned by the Republic); *EM Ltd. v. Republic of Argentina*, 08 Civ. 7974 TPG, 2010 WL 3910604, at *2 (S.D.N.Y. Sept. 30, 2010) (noting NML's withdrawal of its attempt to attach property of Banco de la Nación Argentina, a commercial bank wholly owned by the Republic), *aff'd sub nom. NML Capital, Ltd. v. Republic of Argentina*, 680 F.3d 254 (2d Cir. 2012); *EM Ltd. v. Republic of Argentina*, No. 08 Civ. 7974 (TPG), 2009 WL 3149601, at *6 (S.D.N.Y. Sept. 30, 2009) (rejecting attempt to seize property of autarkic "legally and financially independent entity created 'to promote scientific research concerning agriculture and cattle ranching'") *vacated in part on other grounds*, 2010 WL 3910604 (S.D.N.Y. Sept. 30, 2010).

[4] *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 124-25 (2d Cir. 2009) (rejecting attempt to attach and restrain assets of the Argentine social security system), *cert. denied*, 130 S. Ct. 1691 (2010).

[5] *See, e.g.*, *NML Capital, Ltd. v. Republic of Argentina*, No. 04-0197 (CKK), 2005 U.S. Dist. LEXIS 47027, at *2 n.2 (D.D.C. Aug. 3, 2005) (quashing *ex parte* writs of attachment of diplomatic property).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

312252571.1

4

MEMO. OF PS AND AS IN SUPPORT OF
REP. OF ARGENTINA'S MTN TO DISMISS

manage and administer space projects and undertakings . . . for peaceful purposes.'" *NML I*, 788 F. Supp. 2d at 1115.  The decree, appended to the Complaint as Exhibit C,[6] makes clear that CONAE was established as an autarkic legal entity separate from Argentina that has "full management and financial independence."  *See* Art. 1.

CONAE's structure further demonstrates its separateness from the Republic. Among other things, CONAE is controlled by a Board of Directors and has the power to issue its own internal regulations, establish its own structure, enter into its own agreements with private and public entities, engage in its own acts of trade, and perform all the legal acts necessary for its normal operation.  *See* Art. 4. CONAE is also charged with the duty to obtain for itself "the financial resources necessary for performance of its activities."  Art. 3.  Thus, any request to the Republic for funds must include CONAE's "[i]ncome from the economic and commercial exploitation of patents, license[s], consulting, [and] providing of services," as well as "[i]ncome from performance of research and studies."  Art. 6.

In April 2011, NML sought improperly to interfere with a third-party's launch of a satellite mission involving CONAE, NASA, and the space agencies of France, Italy, and Canada, by bringing a creditor's suit, coupled with a TRO application, against the Republic and the third-party satellite-launching company, Spaceport Systems International.  *See generally NML I*, 788 F. Supp. 2d at 1116. By its attachment suit and TRO application, NML sought to seize the satellite and disrupt its launch, notwithstanding that the activity at issue was clearly *not* commercial.  *See* Statement of Interest of the United States of America at 1, *NML I*, No. 11 Civ. 03507 (C.D. Cal. May 3, 2013), ECF No. 33 (noting that NML's effort

---

[6] "When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper." *Parks Sch. of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995) (citation omitted); *see also Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016, 1025-26 (C.D. Cal. 2010) *aff'd*, 709 F.3d 749 (9th Cir. 2013).  A court may also consider affidavits furnished by the parties where a Rule 12(b)(1) motion factually contests the court's subject matter jurisdiction. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1051 n.2 (9th Cir. 2003).

1  not only targeted "property [that] is immune from attachment under the [FSIA],"

2  but "would severely disrupt the [satellite] mission for all parties, frustrate NASA's

3  substantial investment in the program, and severely disserve the public interest").

4      CONAE, in keeping with its status as a national space agency, was launching

5  the satellite "to conduct a scientific and humanitarian mission, whereby data on the

6  earth's ocean [would] be collected from space and [would] be disseminated for free

7  to the scientific community." *NML I*, 788 F. Supp. 2d at 1123-24.  The goals of the

8  mission, which sought to gather and analyze data on the oceans' salinity levels,

9  were to "'[m]onitor [ ] natural disasters, fires, volcanic events, agriculture, land use,

10  and other environmental variables' and to learn '[t]he relationship between regional

11  soil moisture and essential climate variables . . . on the appearance and spread of

12  diseases.'"  *Id.* at 1116 (internal citation omitted).

13      The Court correctly denied that improper effort as violative of FSIA Section

14  1610(a), rejecting NML's numerous strained arguments and shifting definition of

15  the "property" it was targeting, because however characterized, no CONAE

16  property could be said to be "used for" a commercial activity in the United States.

17  *Id.* at 1121 ("Sensing that its argument was lacking, [NML] recharacterizes the

18  property to be attached as a 'spacecraft bus' instead of the entire . . . Satellite. . . .

19  [and] redefines the commercial activity at issue. . . .  [NML's] last-ditch attempts

20  are of no avail."); *see also id.* at 1122 ("[J]udges are not like pigs, hunting for

21  truffles buried in briefs.") (quoting *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925,

22  929 (9th Cir. 2003)).[7]

23  ─────────────────────
   [7] Due to the expedited basis on which the Republic opposed NML's TRO
24  application, the Republic did not present at that time CONAE's separateness as an
   independent ground for denying NML's requested relief.  The Republic expressly
25  stated there that it was not waiving any defenses in connection with NML's
   complaint or separate attachment application, Republic TRO Br. at 1 n.1, *NML I*,
26  No. 11 Civ. 03507 (C.D. Cal. May 2, 2011), ECF No. 22, and later pointed out that
   CONAE was a separate agency or instrumentality of the Republic in opposition to
27  NML's request for an attachment, Republic Attachment Br. at 9, *NML I*, No. 11
   Civ. 03507 (C.D. Cal. May 2, 2011), ECF No. 29.  In denying NML's TRO
28  application, the Court thus "assume[d]… that 'CONAE *is* Argentina,'" but
   "decline[d] to rule expressly that [NML] ha[d] overcome 'the presumption of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

312252571.1                    6           MEMO. OF PS AND AS IN SUPPORT OF
                                           REP. OF ARGENTINA'S MTN TO DISMISS

*First*, the Court properly applied the Ninth Circuit's "narrow construction" of Section 1610(a)'s "used for" requirement and held that execution was barred because any "use" of the property would take place not in the United States, but in space. *Id*. at 1120-22. *Second*, the Court held that execution was improper in any event, because CONAE's "conduct[, which] encompasse[d] both pre-launch activities, like testing and preparation, and post-launch activities, mainly the gathering of information from space" did not qualify as "commercial" in nature, as the Republic's "cooperat[ion] with nation-states to advance human understanding of the earth's ocean salinity" was "sovereign" in nature. *Id.* at 1122, 1124. Consistent with this latter ruling, NML does not allege in its Complaint – nor could it – that the satellite mission at issue here is commercial in nature. *See* Declaration of Conrado F. Varotto, dated May 15, 2014 ("Varotto Decl."), ¶¶ 3-5 (describing intergovernmental mission to generate scientific data, which CONAE will distribute at no cost, for application in the agricultural sector and the prevention of loss of life and property in the event of natural disasters).

The Court also rejected NML's request for injunctive relief as against the public interest, holding that "the public interest in enforcing judgments" was outweighed in this context by "other public interests, such as: (1) advancement of the general welfare and security of the nation through aeronautical and space activities; (2) the expansion of human knowledge of the earth; and (3) promoting cooperation between the United States and other nations in the peaceful exploration of '[s]pace: the final frontier.'" *Id.* at 1126 (internal citation omitted).

## C.   The Present Action

Notwithstanding this Court's unequivocal rejection, on numerous grounds, of NML's prior attempt to seize a CONAE satellite and disrupt its launch, NML on March 25, 2014, filed *another* creditor's suit against a third-party satellite-

independent and separate legal status' afforded to entities like CONAE in the Ninth Circuit." *NML I*, 788 F. Supp. 2d at 1118.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

312252571.1

7

MEMO. OF PS AND AS IN SUPPORT OF
REP. OF ARGENTINA'S MTN TO DISMISS

launching company seeking to attach CONAE's property and disrupt yet *another* launch of a CONAE satellite.  Compl. ¶ 3.  The timing and manner in which NML commenced the action – the Republic was not properly served and learned of the suit via NML's announcement of it in the press on the day of its filing[8] – suggest that the suit was brought not out of any legitimate belief in its merits, but as part of NML's scorched earth litigation campaign against the Republic.[9]

Like NML's last complaint, the new Complaint alleges in conclusory form "[that] CONAE is part of the Argentine state, such that a judgment against Argentina is a judgment against CONAE," *id.* ¶ 17; *see also id.* ¶¶ 18-36, and that the satellite property at issue is being "used for a commercial activity in the United States," *id.* ¶ 34; *see also id.* ¶¶ 27-33.  Specifically, NML alleges that CONAE should be treated as the Republic itself because it is a "political subdivision" of the Republic rather than a separate "agency or instrumentality."  *Id.* ¶ 18.  As support for this theory, NML cites an inapposite line of cases, including the Second Circuit's decision in *Garb v. Republic of Poland*, 440 F.3d 579 (2d Cir. 2006), *extending* foreign-state immunity or procedural protections to cover certain government ministries or departments because their "core functions" were

---

[8] *See e.g.*, Edvard Pettersson, *Argentina Creditor NML Seeks Rights to SpaceX Launch Deal*, Bloomberg, Mar. 25, 2014 (quoting statement from NML's counsel). The Republic has not been properly served with process in this case because NML did not comply with the service procedures set forth in FSIA Section 1608.  *See* 28 U.S.C. § 1608(a)(1)-(4).  NML purported to serve the Republic by delivering process to the New York Branch of Banco de la Nación Argentina ("BNA") on April 1, 2014 (seven days after NML's press announcement), but BNA is the Republic's agent for service only for actions instituted in *New York*, not in California or any other jurisdiction.  Where, as here, no "special arrangement [for service] exists," service must be accomplished "in accordance with an applicable international convention on service of judicial documents."  28 U.S.C. § 1608(a)(2). The Republic appears here without waiving any objection to NML's improper service, and expressly reserves the right to invoke the FSIA's service provisions in the future.

[9] The timing of the suit appears driven by NML's desire to reference this action in the brief NML filed one day later in the United States Supreme Court concerning the proper scope of discovery in aid of execution under the FSIA.  Brief for Respondent at 45 n.7, *Republic of Argentina v. NML Capital, Ltd.*, No. 12-842 (S. Ct. March 26, 2014) (claiming that the discovery at issue there led to potentially attachable property because it "led . . . to" this proceeding).

1  governmental rather than commercial.  *Id.*

2       Recognizing that any effort to execute upon the satellite or its components is

3  foreclosed by the Court's decision in *NML I*, NML redefines the "property" it

4  targets yet again, vaguely alleging in the Complaint that the property upon which it

5  seeks to execute is "CONAE's valuable rights" under its contracts with SpaceX to

6  provide launch services in connection with upcoming launches of CONAE

7  satellites.  *Id.* ¶ 29.[10]  That is, notwithstanding that the physical satellites are

8  immune from execution because they are not "used for" a commercial activity in

9  the United States, NML alleges that it can nonetheless execute on CONAE's

10  purported derivative contract rights to launch them.  In support of this

11  counterintuitive theory, NML alleges in its Complaint that CONAE's contract

12  rights are "used for" a commercial activity in the United States because "the nature

13  of the Launch Services Contracts is commercial" and CONAE "acquired" and

14  "maintains" those rights "in connection with those contracts."  *Id.* ¶ 33.  This Court

15  has already rejected that very argument as contrary to Ninth Circuit precedent.

16  *NML I*, 788 F. Supp. 2d at 1123 ("The Ninth Circuit [] has already held 'how [a]

17  property was generated is irrelevant' to determining whether that property is being

18  used for a commercial activity." (quoting *Af-Cap Inc. v. Chevron Overseas (Congo)*

19  *Ltd.*, 475 F.3d 1080, 1087 (9th Cir. 2007)).

20

21

22

23  [10] The Complaint is also broadly directed at "any [p]roperty" that CONAE
    "acquired or maintains in connection with those contracts." *Id.* ¶ 33.  But such

24  unsupported, vague allegations about unidentified property fail as a matter of law.
    NML bears the burden of demonstrating that an exception to FSIA immunity

25  applies.  *See Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737,
    750 (7th Cir. 2007) ("[I]n order to determine whether immunity from execution or

26  attachment has been waived, the plaintiff must identify specific property upon
    which it is trying to act. . . .  A court cannot give a party a blank check when a

27  foreign sovereign is involved.").  NML cannot simply declare that it seeks to
    execute upon *all* Republic property and then compel the Republic to demonstrate

28  that all of its property is immune.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

312252571.1                                  9                    MEMO. OF PS AND AS IN SUPPORT OF
                                                                  REP. OF ARGENTINA'S MTN TO DISMISS

## III.   ARGUMENT

The FSIA provides the exclusive and comprehensive scheme for obtaining and enforcing judgments against foreign states and their legally separate "agencies or instrumentalities."  *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989); *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 428 (5th Cir. 2006).  Although the FSIA does not provide methods for the enforcement of judgments against foreign states, it mandates – whatever the method – that those judgments may not be enforced by resort to immune property, *i.e.*, foreign-sovereign property that is not located in the United States and currently being used for a commercial activity in the United States.  *See* 28 U.S.C. §§ 1609-1610; *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1127 (9th Cir. 2010) (because foreign-state property is presumptively immune from execution, the burden is on "the plaintiff to prove that immunity does not exist"); *NML I*, 788 F. Supp. 2d at 1117-18 ("For [NML] to prevail on its [creditor's complaint], the parties agree that an exception under 28 U.S.C. § 1610(a) of the [FSIA] must apply.").  California law on the enforcement of judgments therefore applies to this suit only insofar as it does not conflict with the FSIA's immunity scheme.  *Peterson*, 627 F.3d at 1131.[11]

As in any motion to dismiss, this action cannot proceed unless NML has pleaded facts indicating the existence of a plausible entitlement for relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also id.* at 570 (possibility of relief is not enough; dismissal is required where plaintiffs "have not nudged their claims across the line from conceivable to plausible").  Although the Court must accept all allegations of material fact as true, "conclusory allegations" that "do nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation" – are entitled to "no weight."  *Moss v. U.S.*

---

[11] This action is therefore unlike a creditor's suit against a private party, where the burden is on the defendants to defeat the suit on the grounds that the property at issue is off-limits to the judgment creditor.  *See* C.C.P. § 708.280 (judgment debtor may "establish[] to the satisfaction of the court that the property or debt is exempt from enforcement of a money judgment").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

312252571.1                          10                    MEMO. OF PS AND AS IN SUPPORT OF
                                                          REP. OF ARGENTINA'S MTN TO DISMISS

*Secret Serv.*, 572 F.3d 962, 968-69 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)); *see also Helman v. Alcoa Global Fasteners, Inc.*, 843 F. Supp. 2d 1038, 1040 (C.D. Cal. 2011) ("A complaint that offers mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").  Under this standard, the Complaint must be dismissed.

### A.    The Complaint Fails to Plausibly Allege that CONAE Is Liable for the Republic's Debts or Otherwise Subject to Jurisdiction Here.

It is well-established that "agencies or instrumentalities" of foreign states are entitled both to their own immunity from U.S. court jurisdiction under the FSIA *and* to a presumption that they are separate from their parent states and thus not liable for the state's debts.  *See Bancec*, 462 U.S. at 625-27 ("government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such. . . . [and] the instrumentality's assets and liabilities must be treated as distinct from those of its sovereign"); *Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1069-74 (9th Cir. 2002) (judgment creditor of Iran could not execute on property of an Iranian instrumentality because it had not overcome the presumption of separateness); *Seijas v. Republic of Argentina*, 502 Fed. Appx. 19, 20 (2d Cir. 2012) ("Because BNA, a commercial bank wholly owned by Argentina, qualifies as an 'agency or instrumentality of a foreign state' . . . this court lacks subject matter jurisdiction to adjudicate plaintiffs' claim unless they demonstrate that an exception to the FSIA applies.").[12]

This jurisdictional immunity and strong presumption of separateness can only be overcome by establishing that an exception to immunity applies and that the agency or instrumentality is the parent state's "alter ego" – claims that NML

---

[12] The immunity for agencies or instrumentalities reflects important policies underlying the FSIA.  *See* H.R. Rep. No. 94-1487, at 29-30 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6628-29 ("If U.S. law did not respect the separate juridical identities of different agencies or instrumentalities, it might encourage foreign jurisdictions to disregard the juridical divisions between different U.S. corporations or between a U.S. corporation and its independent subsidiary.").

does not even allege in its Complaint.[13]  The Court should accordingly dismiss the Complaint for both lack of subject matter jurisdiction and failure to state a claim, because CONAE plainly qualifies as an immune "agency or instrumentality" of the Republic, and NML has offered no basis for the Court's jurisdiction over this action or for disregarding CONAE's presumptive separateness.

The FSIA defines "agency or instrumentality" as any entity (1) "which is a separate legal person, corporate or otherwise" (2) "which is an organ of a foreign state . . . " and (3) "which is neither a citizen of a State of the United States . . . nor created under the laws of any third country."  28 U.S.C. § 1603(b); *EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 640 (9th Cir. 2003) ("We have observed that [the FSIA]'s legislative history suggests that Congress intended the terms 'organ' and 'agency or instrumentality' to be read broadly. . . . In defining whether an entity is an organ, courts consider whether the entity engages in a public activity on behalf of the foreign government") (internal citation omitted).  CONAE clearly satisfies each of these criteria, and indeed conforms to the "typical government instrumentality" described by the Supreme Court in *Bancec*.  There, the Supreme Court described the paradigmatic "agency or instrumentality" as an entity that is:

    i.     "Created by an enabling statute that prescribes the powers and duties of the instrumentality and specifies that it is to be managed by a board selected by the government in a manner consistent with the enabling law;"

    ii.    "established as a separate juridical entity, with the powers to hold and sell property and to sue and be sued;" and

---

[13] "[T]he presumption of separate juridical status may be overcome in two ways. First, where it can be shown that the 'corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created, we have held that one may be held liable for the action of the other. . . .  Second, an instrumentality should not be deemed a separate juridical entity where doing so would work 'fraud or injustice.'"  *Flatow*, 308 F.3d at 1070 (citing *Bancec*, 462 U.S. at 629).

iii.   "primarily responsible for its own finances."[14]

*Bancec*, 462 U.S. at 624.

As the National Decree creating CONAE as a separate autarkic (*i.e.*, self-sufficient), legal entity makes clear, CONAE shares all of these features. Specifically, CONAE was:

i.   Created by Decree No. 995/1991, dated May 28, 1991, which prescribes CONAE's powers and duties, Compl. Ex. C Arts. 3-4, and specifies that CONAE is to be managed by a Board of Directors primarily selected by the Argentine Executive, *id.* Art. 5;

ii.   Established as a separate legal entity "with power to act publicly and privately," *id.* Art. 1, to issue internal regulations and establish its structure, enter into agreements with private and public entities, engage in acts of trade, and perform all the legal acts necessary for its normal operation, *id.* Art. 4; and

iii.   Designed to have "full management and financial independence," *id.* Art. 1, with a duty to "[o]btain the financial resources necessary for performance of its activities," *id.* Art. 3; *see also id.* Art. 6 (budget application must include CONAE's "[i]ncome from the economic and commercial exploitation of patents, license[s], consulting, providing of services, and any other income originating in the activity that it

---

[14] These features overlap with the test that the Ninth Circuit applies to determine whether an entity constitutes an "organ" and therefore an "agency or instrumentality" under Section 1603(b)(2). *See California Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1098 (9th Cir. 2008) ("To determine whether an entity [is an "organ"], 'courts examine the circumstances surrounding the entity's creation, the purpose of its activities, its independence from the government, the level of government financial support, its employment policies, and its obligations and privileges under state law.'") (internal citation omitted).

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

312252571.1

13

MEMO. OF PS AND AS IN SUPPORT OF
REP. OF ARGENTINA'S MTN TO DISMISS

performs" as well as "[i]ncome from performance of research and studies").[15]

*See also* Declaration of Oleh Jachno ¶¶ 3-5, dated May 2, 2011 (Varotto Decl. Ex. B).

There accordingly can be no reasonable dispute that CONAE is a "separate legal person" and an "organ" of the Republic that constitutes an "agency or instrumentality" under the FSIA.  *See EM Ltd.*, 2009 WL 3149601, at *6, *vacated in part on other grounds,* 2010 WL 3910604 (S.D.N.Y. Sept. 30, 2010) (autarkic "legally and financially independent entity created 'to promote scientific research concerning agriculture and cattle ranching'" was agency or instrumentality of Republic); *Powerex Corp.*, 533 F.3d at 1098 (Canadian province's electric power distributor was agency or instrumentality); *see also Alperin v. Vatican Bank*, 360 F. App'x 847, 849 (9th Cir. 2009) (Vatican Bank created as a "public and independent juridic entity. . . responsible for managing assets placed in its care for the purpose of supporting religious or charitable works" was agency or instrumentality); *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd.*, 476 F.3d 140, 143 (2d Cir. 2007) (*per curiam*) (Korean agency created "for the national purpose of examining, supervising, and investigating Korean financial institutions" was agency or instrumentality).

NML seeks to circumvent this barrier to its creditor's suit and the Supreme Court's express directive in *Bancec* that the FSIA "*is not intended to affect the substantive law of liability.*" 462 U.S. at 620 (emphasis added); *see also Flatow*, 308 F.3d at 1069 ("[The FSIA does not resolve questions of liability. . . . This distinction . . . is crucial.").  It thus alleges that CONAE is liable for the Republic's debts because under the FSIA it is somehow not a separate legal "organ" – and therefore not an "agency or instrumentality" – but is a "political subdivision" of

---

[15] NML's allegation to the contrary that "CONAE does not have financial independence," Compl. ¶ 23, is conclusory and ignores that these facts demonstrate the exact opposite.

Argentina that, under the case law NML cites, should be considered "an integral part of [Argentina's] political structure." *Garb*, 440 F.3d at 594, 598 (holding that Poland's Ministry of the Treasury was part of Poland because its "core functions" were governmental); Compl. ¶¶ 17-28. This allegation fails as a matter of law and logic.

  *Garb* and its progeny do not and cannot deal with questions of substantive liability, much less create an exception to the narrow circumstances under which *Bancec* permits disregard of the separate legal identity of an agency or instrumentality in order to impose liability on it for the state's obligations.  The *Garb* "core functions" test, which in any event CONAE does not meet, applies only in the context of determining whether a given entity is the state itself, or an agency or instrumentality, for purposes of applying FSIA provisions that distinguish between the two, such as provisions that impose different jurisdictional standards under the expropriation exception to FSIA immunity, different service requirements, and different scopes of execution.  *See Garb*, 440 F.3d at 582 (applying "core functions" test to interpret FSIA Section 1605(a)(3)); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153 (D.C. Cir. 1994) (applying "core functions" test to interpret FSIA Section 1608); *Ministry of Def. & Support for Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 495 F.3d 1024, 1035-36 (9th Cir. 2007) *vacated on other grounds*, 546 U.S. 450 (2006) (applying "core functions" test to interpret FSIA Section 1610(b)).  These decisions have no application to the question of whether an "agency or instrumentality" is substantively liable for the state's debts.

  This case law thus does not and could not support NML's novel argument that a judgment creditor can use the FSIA's provisions to hold a separate juridical entity *liable* for a foreign state's debts, notwithstanding *Bancec's* unequivocal statement that the FSIA "was not intended to affect substantive law determining the liability of a foreign state or instrumentality, or the attribution of liability among

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

312252571.1

15

MEMO. OF PS AND AS IN SUPPORT OF
REP. OF ARGENTINA'S MTN TO DISMISS

instrumentalities of a foreign state."  462 U.S. at 620; *see also Compagnie Noga D'Importation Et D'Exportation S.A. v. Russian Fed'n*, 361 F.3d 676, 693 (2d Cir. 2003) (Jacobs, J., concurring) ("[E]ven though the Federation may be 'interpos[ing] its separate juridical status' . . . to defeat a legitimate claim for arbitral confirmation, *Bancec* requires that we start with a robust presumption that the Government and the Federation are separate juridical entities.").  Indeed, the Supreme Court in *Bancec* expressly "decline[d] to adopt" the "core functions" test in the context of assigning liability, noting that its ruling was *not* based on a "standard in which the determination whether or not to give effect to the separate juridical status of a government instrumentality turns in part on whether the instrumentality in question performed a 'governmental function,'" 462 U.S. at 633 n.27; *see also id.* ("[T]he concept of a 'usual' or 'proper' governmental function changes over time and varies from nation to nation.").  The Court in *NML I* therefore properly acknowledged that the *Bancec* presumption applies to CONAE when it noted that it "decline[d] to rule expressly that [NML] ha[d] overcome 'the presumption of independent and separate legal status' *afforded to entities like CONAE* in the Ninth Circuit."  788 F. Supp. 2d at 1118 (citing *Flatow*, 308 F.3d at 1070) (emphasis added).

Moreover, the cases cited by NML, including the Ninth Circuit's decision in *Cubic*, all involved (unlike here) ministries, treasuries, or other government departments performing core political functions that plainly *are* part and parcel of their parent governments and were not created as separate and independent juridical entities.  *See Cubic*, 495 F.3d at 1035-36 (Ministry of Defense was "inherently a part of the political state"); *see also Transaero, Inc.*, 30 F.3d at 153 (Bolivian armed forces were foreign state itself because "armed forces are as a rule so closely bound up with the structure of the state," and the "'powers to declare and wage war'" are among the "'necessary concomitants'" of sovereignty) (internal citation omitted).  Tellingly, in instances where organs of foreign states *are* established with

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

312252571.1

16

MEMO. OF PS AND AS IN SUPPORT OF
REP. OF ARGENTINA'S MTN TO DISMISS

separate "legal personality," the Second Circuit continues to recognize after *Garb* that there is "no doubt" that they constitute presumptively separate "agencies or instrumentalities" without applying the "core functions" test. *European Cmty. v. RJR Nabisco, Inc.*, No. 11-2475-cv, 2014 WL 1613878, at *11 & n.15 (2d Cir. Apr. 29, 2014). And the Ninth Circuit in *Cubic* made clear that its determination that the Ministry of Defense was part of the Iranian government was based on the fact that the Ministry of Defense did not submit that it was "'primarily responsible for its own finances,'" "'run as a distinct economic enterprise,'" "'operates with independence from close political control,'" and "exhibit[] any of the other traits . . . that the [*Bancec*] Court has identified as characteristic of a 'separately constituted legal entity.'" *Cubic*, 495 F.3d at 1035-1036 (citing *Bancec*, 462 U.S. at 624).

Unsurprisingly, NML cites no case in which an entity such as CONAE – an autarkic organ with operational and financial independence and its own Board of Directors – was held to be inseparable from the foreign state or broadly liable for its debts. *Cf. Compagnie Noga D'Importation et D'Exportation S.A.*, 361 F.3d at 685-86 (Russian Government same as the Russian Federation and "analogous to the cabinet of the American president"). Indeed, to equate CONAE with the defense ministry, the treasury, or any other integral part of the national government would eviscerate the distinction between "agencies or instrumentalities" and foreign states that pervades the FSIA. Neither the *Garb* court nor the Ninth Circuit in *Cubic* intended such a result, and this Court should not sanction it here.

**B.    The Complaint Fails to Plausibly Allege That the Purported Foreign-State Property It Targets Falls Under an Exception to FSIA Immunity.**

Even were the Court to disregard CONAE's separate legal status and treat it as the Republic itself, the Complaint must still be dismissed because it fails to sufficiently allege that the purported property it seeks to apply to NML's judgments is subject to execution under the FSIA's narrow immunity exceptions. All foreign-

1   state property is presumptively immune from attachment or execution, and creditors

2   bear the burden of establishing that an exception exists.[16] Here, that requires NML

3   to establish that the alleged property at issue is "used for" a commercial activity in

4   the United States.  28 U.S.C. §§ 1610(a); *see also Af-Cap Inc.*, 475 F.3d at 1087.

5   NML's Complaint fails to plausibly allege facts that, even if true, would satisfy this

6   requirement.

7          As the Court noted in *NML I*, "the Ninth Circuit defined the precise meaning

8   of 'used for' in § 1610" in *Af-Cap, Inc*, and adopted a "narrow construction" that

9   requires "the property in question [to be] put into action, put into service, availed or

10   employed *for* a commercial activity, not *in connection* with a commercial activity

11   or *in relation* to a commercial activity."  788 F. Supp. 2d 1120.  Moreover, the

12   property must be in "active employment for commercial purposes" by the foreign

13   state at the time the writ of attachment or execution is sought.  *Id.* ("determining

14   that a property may not be executed upon if it 'merely [has] a passive, passing, or

15   past connection to commerce"); *Aurelius Capital Partners, LP v. Republic of*

16   *Argentina*, 584 F.3d 120, 130 (2d Cir. 2009) ("Section 1610(a) does not say that the

17   property in the United States of a foreign state that '*will* be used' or '*could*

18   *potentially* be used' for a commercial activity in the United States is not immune

19   from attachment or execution.  More is required: . . . .  [T]he property that is subject

20   to attachment and execution . . . must have been 'used for a commercial activity' *at*

21   *the time* the writ of attachment or execution is issued.") (emphasis in original).

22          The Complaint is wholly devoid of any plausible allegation of commercial

23   "use," alleging only that CONAE's contract rights were "acquired" in the past and

24   _____

25   [16]"In applying the burden-shifting framework, a district court must heed the Ninth
     Circuit's instruction that 'the exceptions to immunity from execution are more

26   narrow than the exceptions to immunity from suit . . . . because 'Congress fully
     intended to create rights without remedies, aware that plaintiffs would often have to

27   rely on foreign states to voluntarily comply with U.S. court judgments.'" *NML I*,
     788 F. Supp. 2d at 1119-20 (quoting *Peterson*, 627 F.3d at 1128); *see also id.* at

28   1120 ("[C]ourts [must] proceed carefully in enforcement actions against foreign
     states.").

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

312252571.1                          18                    MEMO. OF PS AND AS IN SUPPORT OF
                                                            REP. OF ARGENTINA'S MTN TO DISMISS

are now "maintained" "in connection with" a purportedly commercial transaction –
contracts that CONAE entered into with SpaceX.  Compl. ¶ 33.  But as made clear
above, the Ninth Circuit has already rejected the argument that property obtained
"in connection with" an activity constitutes a subsequent "use" of the property for
the purposes of FSIA Section 1610(a).  *See Af-Cap Inc.*, 475 F.3d at 1087.  NML's
allegations are an improper attempt to blur the line between a purportedly
commercial transaction that *generated* property and any subsequent *use* to which
that property is allegedly put.  *See* Compl. ¶ 32 (alleging that CONAE's purported
"use" of its contract rights is commercial because those rights derive from a
purportedly commercial transaction with SpaceX).  As the Ninth Circuit has
explained, "[w]hat matters under [Section 1610(a)] is what the property is 'used
for,' not how it was generated or produced."  *Af-Cap, Inc.*, 475 F.3d. at 1087
(internal citation and quotation marks omitted); *see also Conn. Bank of Commerce
v. Republic of Congo*, 309 F.3d 240, 251 (5th Cir. 2002) ("[E]ven if a foreign
state's property has been generated by commercial activity in the United States, that
property is not thereby subject to execution or attachment if it is not [also] 'used
for' a commercial activity within our borders.).[17]

    Courts have thus held that property *received* by a foreign state in a
purportedly commercial transaction – like the alleged contract rights here – is not
deemed to have been "used" by the foreign state in the underlying transaction
itself.  This interpretation accords with the plain meaning of "used for."  As the
Fifth Circuit explained:

---

[17] NML's reliance on *Republic of Argentina v. Weltover Inc.*, 504 U.S. 607, 614-615 (1992) to suggest that CONAE is "using" its contract rights for a commercial activity is therefore misplaced.  Compl. ¶ 33.  That case concerned the definition of "commercial activity" in the context of Section 1605(a)(2)'s broader exception to *jurisdictional* immunity, and thus at most would support the proposition that CONAE could be subject to jurisdiction for a suit alleging breach of contract. *Weltover*, 504 U.S. at 611.  But as the Ninth Circuit has observed, the "litany of cases" concerning the FSIA's commercial activity exception to jurisdictional immunity "fails to enlighten [a] discussion" of Section 1610 execution immunity "because none of them analyze the pivotal phrase at issue . . . 'used for a commercial activity in the United States.'" *Af-Cap*, 475 F.3d at 1090.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

312252571.1                                    19                    MEMO. OF PS AND AS IN SUPPORT OF
                                                                    REP. OF ARGENTINA'S MTN TO DISMISS

> In ordinary usage, we would not say that the revenue from a transaction is 'used for' that transaction.  For example, in  return for an employee's service to his employer, he generally  receives revenue in the form of a salary.  It would be strange to  say that 'The employee uses his salary for his job.' He *earns* his  salary from his job, but he *uses* it to pay the rent, buy groceries,  and so forth.  The revenue from a commercial transaction does not  have the instrumental relationship to the commercial activity  denoted by the phrase 'used for;' it is not put in service of that  activity, instead it is the end result . . . from the activity.

*Conn. Bank of Commerce*, 309 F.3d at 254 (emphasis in original).

It would be equally strange to say that CONAE is using the contract rights generated by a transaction with SpaceX for "maintaining" the underlying transaction itself.  *See Cubic*, 495 F.3d at 1036 ("Cautioning that 'FSIA does not contemplate a strained analysis of the words 'used for' and 'commercial activity,' we instructed courts to 'consider[] the use of the property in a straightforward manner.'" (quoting *Af-Cap Inc.*, 495 F.3d at 1091)).  Instead, consistent with common sense and the case law, CONAE is receiving as consideration the right to SpaceX's services to launch its satellites into space, but it is not "using" those rights for a commercial activity within the meaning of Section 1610(a).

Even if "maintaining" contract rights, Compl. ¶ 33, did constitute "use" under the FSIA – which it does not – here, of course, CONAE's "use" would not be "commercial" in nature, any more than a foreign state's contract to repair its embassy is used for a "commercial activity," rather than the sovereign activity of upkeep of a diplomatic establishment.  *See* Decision at 2-3, *Brant Point, Ltd. v. Republic of Congo*, Index No. 4238/04 (Sup. Ct. Westchester Cnty. Dec. 12, 2006)

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

312252571.1

20

MEMO. OF PS AND AS IN SUPPORT OF
REP. OF ARGENTINA'S MTN TO DISMISS

1   (Declaration of Donald Brown, dated May 15, 2014, Ex. A) ("[T]he [property] is

2   being used to restore Congo's embassy property which is sovereign in nature to

3   normal condition and operation and is not therefore being 'used for a commercial

4   activity.'").  The Court has already held that CONAE's "use" of its satellites is not

5   commercial – and the Complaint does not allege otherwise – thus, logically, any

6   "use" by CONAE of the underlying contract rights to launch them could not be

7   commercial either.  Otherwise, the FSIA's immunities would be rendered

8   meaningless whenever a contract with a third party is necessary to "use" immune

9   property.  *See Colella v. Republic of Argentina*, No. C 07-80084 WHA, 2007 WL

10  1545204, at *5 (N.D. Cal. May 29, 2007) (Alsup, J.) ("'The phrase 'used for' in

11  §1610(a) is not a mere syntactical infelicity that permits courts to look beyond the

12  'use' of the property, and instead try to find any kind of nexus or connection to

13  commercial activity in the United States.'" (quoting *Af-Cap Inc.*, 475 F.3d at

14  1087)).

15       This framework does not mean that contractual rights to receive money or

16  services are *never* attachable under the FSIA, only that they must affirmatively be

17  put to some commercial "use" before they are.  For example, in *Cubic*, the Ninth

18  Circuit considered a judgment creditor's attempt to attach a $2.8 million judgment

19  held by Iran – which was in essence a "right" to payment for that amount.  *See

20  Cubic*, 495 F.3d at 1027.  Relying on the cases cited above, the court rejected the

21  plaintiff's argument that the commercial activity underlying the judgment rendered

22  the judgment itself attachable, stating "we are still faced with the question posed by

23  § 1610(a) on the use to which [Iran] has put the judgment"  *Id.* at 1036.  The court

24  then went on to give examples of "uses" that could satisfy Section 1610(a) in this

25  context, including using the judgment "as security on a loan, as payment for goods,

26  or in any other commercial activity."  *Id.*at 1037.  Here, NML has failed to allege

27  any such "use," and the Complaint must accordingly be dismissed.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

312252571.1                    21              MEMO. OF PS AND AS IN SUPPORT OF
                                               REP. OF ARGENTINA'S MTN TO DISMISS

1    **IV.**    **CONCLUSION**

2        For the foregoing reasons the Republic's motion should be granted and the

3   Complaint should be dismissed with prejudice.

4

5   Dated:     May 15, 2014           MANATT, PHELPS & PHILLIPS, LLP

6

7                               By:    /s/ Donald R. Brown

8                                 Donald R. Brown
                                   Attorneys for *Defendant*

9                                 THE REPUBLIC OF ARGENTINA

10                               CLEARY GOTTLIEB STEEN &
                                 HAMILTON LLP

11                               Jonathan I. Blackman

12                               Carmine D. Boccuzzi
                                Michael M. Brennan

13                               Attorneys for *Defendant*
                                THE REPUBLIC OF ARGENTINA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

312252571.1                  22               MEMO. OF PS AND AS IN SUPPORT OF
REP. OF ARGENTINA'S MTN TO DISMISS