1  DONALD R. BROWN (Bar No. CA 156548)
   E-mail: dbrown@manatt.com
2  CARL L. GRUMER (Bar No. CA 066045)
   E-mail: cgrumer@manatt.com
3  MANATT, PHELPS & PHILLIPS, LLP
   11355 West Olympic Boulevard
4  Los Angeles, CA 90064-1614
   Telephone: (310) 312-4000
5  Facsimile: (310) 312-4224

6  JONATHAN I. BLACKMAN (*Pro Hac Vice*)
   E-mail: jblackman@cgsh.com
7  CARMINE D. BOCCUZZI (*Pro Hac Vice*)
   E-mail: cboccuzzi@cgsh.com
8  MICHAEL M. BRENNAN (*Pro Hac Vice*)
   E-mail: mbrennan@cgsh.com
9  CLEARY GOTTLIEB STEEN & HAMILTON LLP
   One Liberty Plaza
10 New York, NY 10006
   Telephone: (212) 225-2000
11 Facsimile: (212) 225-3999

12 Attorneys for *Defendant*
   THE REPUBLIC OF ARGENTINA

13

14                  UNITED STATES DISTRICT COURT

15                        CENTRAL DISTRICT

16

17 NML CAPITAL, LTD.,                    No. 14 CV 02262-SVW-Ex

18            Plaintiff,                 Hon. Stephen V. Wilson

19       vs.                            **REPLY OF THE REPUBLIC OF
                                        ARGENTINA IN SUPPORT OF
20 SPACE EXPLORATION                    MOTION TO DISMISS
   TECHNOLOGIES CORP., aka              COMPLAINT UNDER F.R.C.P.
21 SPACEX, a Delaware corporation;      12(b)(1) AND (6)**
   THE REPUBLIC OF ARGENTINA, a
22 foreign state, including its *COMISION
   NACIONAL DE ACTIVIDADES*
23 *ESPACIALES*, aka CONAE, a political   Hearing Date:  June 30, 2014
   subdivision of the Argentine State; and  Time:         1:30 p.m.
24 DOES 1-10,                          Courtroom:     6

25            Defendants.              Compl. filed:  March 25, 2014

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I.     SUMMARY OF REPLY .................................................................. 1

II.    ARGUMENT ................................................................................. 2

     A.    The Complaint Fails to Plausibly Allege that CONAE Is Liable for the Republic's Debts or Otherwise Subject to Jurisdiction Here ..................................................................................... 2

     B.    The Complaint Fails to Plausibly Allege that the Purported Foreign-State Property It Targets Falls Under an Exception to FSIA Immunity ............................................................................ 8

III.   CONCLUSION ........................................................................... 12

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

i

REPLY IN SUPPORT OF REP. OF
ARGENTINA'S MTN TO DISMISS

1

## TABLE OF AUTHORITIES

2

3

**Cases**                                                                **Page(s)**

4
*Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*,
5
475 F.3d 1080 (9th Cir. 2007) ...................................................................10, 11-12

6
*Colella v. Republic of Argentina*,
7
No. C 07-80084 WHA, 2007 WL 1545204 (N.D. Cal. May 29, 2007).................. 12

8
*Compagnie Noga D'Importation et D'Exportation S.A. v. The Russian
Federation*,
9
361 F.3d 676 (2d Cir. 2004) ................................................................................5

10
*Conn. Bank of Commerce v. Republic of Congo*,
11
309 F.3d 240 (5th Cir. 2002) ........................................................................8-9, 10

12
*European Cmty. v. RJR Nabisco, Inc.*,
13
No. 11-2475-cv, 2014 WL 1613878 (2d Cir. Apr. 29, 2014) ...............................5

14
*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983).................................................................................2-3 6, 7
15

16
*Flatow v. Islamic Republic of Iran*,
308 F.3d 1065 (9th Cir. 2002) ........................................................................2-3
17

18
*Garb v. Republic of Poland*,
440 F.3d 579 (2d Cir. 2006) ................................................................................5

19

20
*In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71(2d Cir. 2008),
*abrogated on other grounds*, *Samantar v. Yousuf*, 560 U.S. 305 (2010)...............11

21
*Jones v. United States*,
22
529 U.S. 848 (2000)...................................................................................11-12

23
*Kato v. Ishihara*,
24
360 F.3d 106 (2d Cir. 2004) ...............................................................................11

25
*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of
Iran v. Cubic Def. Sys., Inc.*, 495 F.3d 1024 (9th Cir. 2007),
26
*vacated on other grounds*, 546 U.S. 450 (2006) ...........................................2, 3, 5, 9

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

ii

REPLY IN SUPPORT OF REP. OF
ARGENTINA'S MTN TO DISMISS

**Page(s)**

*NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*,
788 F. Supp. 2d 1111 (C.D. Cal. 2011) ........................................................ 8, 10, 11

*O'Connell Mach. Co., Inc. v. M.V. Americana*, 566 F. Supp. 1381
(S.D.N.Y. 1983) *aff'd*, 734 F.2d 115 (2d Cir. 1984) ...................................... 7

*Peninsula Asset Management (Cayman) Ltd. v. Hankook Tire Co., Ltd.*,
476 F.3d 140 (2d Cir. 2007) ........................................................................ 5, 7

*Republic of Argentina v. Weltover, Inc.*,
504 U.S. 607 (1992) ...................................................................................... 9

*Roeder v. Islamic Republic of Iran*,
333 F.3d 228 (D.C. Cir. 2003) ...................................................................... 5

*Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*,
877 F. 2d 574 (7th Cir. 1989) .....................................................................9-10

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
30 F.3d 148 (D.C. Cir. 1994) ........................................................................ 5

*Wye Oak Tech., Inc. v. Republic of Iraq*,
666 F.3d 205 (4th Cir. 2011) ...................................................................... 4, 5

**Rules and Statutes**

28 U.S.C. § 1603(b) ........................................................................................ 2

28 U.S.C. § 1603(b)(1) .................................................................................... 6

28 U.S.C. § 1605 .......................................................................................... 10

28 U.S.C. § 1608(a) ........................................................................................ 2

28 U.S.C. § 1608(b) ........................................................................................ 2

28 U.S.C. § 1610 .......................................................................................... 10

28 U.S.C. § 1610(a) ..................................................................................... 1, 2

28 U.S.C. § 1610(b) ..................................................................................... 2, 3

Federal Rule of Civil Procedure 12(b)(1) ......................................................2

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

REPLY IN SUPPORT OF REP. OF
ARGENTINA'S MTN TO DISMISS

**Page(s)**

Federal Rule of Civil Procedure 12(b)(6) ......................................................... ....2, 4

**Other Authorities**

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ....................3

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

iv

REPLY IN SUPPORT OF REP. OF
ARGENTINA'S MTN TO DISMISS

## I.      SUMMARY OF REPLY

NML's post-judgment Complaint[1] seeking to execute on the property of CONAE must be dismissed.  As a separate legal entity, CONAE is not liable for the Republic's debts or subject to jurisdiction here unless and until NML makes an "alter ego" showing that it does not – because it cannot – make.  The inapposite line of cases cited by NML simply does not support NML's novel, and meritless, request for this Court to reach a contrary conclusion.

In any event, even were the Court to accept NML's invitation to equate CONAE with the Republic, the Complaint fails to state a claim for the additional reason that the CONAE property at issue is not subject to execution under FSIA Section 1610(a).  In recognition of this Court's ruling in *NML I* that CONAE's satellites are immune because they are used for sovereign, non-commercial activities, NML does not seek to execute upon CONAE's satellites themselves.  NML nonetheless asks the Court to render that decision meaningless by permitting NML to execute upon CONAE's contractual right to have SpaceX launch those immune satellites, arguing that CONAE is somehow "using" the contract rights that it received from SpaceX to obtain the ultimate consideration that SpaceX owes CONAE.  These verbal gymnastics are foreclosed by Ninth Circuit precedent (and ordinary English usage).  CONAE is not "using" those contract rights for *any* activity, let alone one that is "commercial" in nature, and the ultimate consideration owed by SpaceX will be "used" in the future for a sovereign, non-commercial satellite mission.  No amount of wordplay can transform those rights into property being actively "used" for a "commercial" activity.

---

[1] Capitalized terms have the definitions assigned in the Republic's opening brief.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

REPLY IN SUPPORT OF REP. OF
ARGENTINA'S MTN TO DISMISS

## II.   ARGUMENT

### A.   The Complaint Fails to Plausibly Allege that CONAE Is Liable for the Republic's Debts or Otherwise Subject to Jurisdiction Here.

As demonstrated by the Republic's opening brief, the Complaint must be dismissed for lack of subject matter jurisdiction and for failure to state a claim[2] because CONAE is an agency or instrumentality of the Republic, and so is presumptively separate from the Republic under the Supreme Court's decision in *Bancec*, and immune from this Court's jurisdiction.  Republic Br. [Dkt. 18-1] at 12-14.  NML's primary challenge is to argue that CONAE is not a "separate legal person" from the Republic under the FSIA, and thus, according to NML, it states a claim against the Republic over which this Court has jurisdiction.  NML is wrong.

*First*, NML incorrectly asserts that the Ninth Circuit applies the "core functions" test, rather than *Bancec*, to determine whether an entity is substantively liable for the debts of a foreign state.  *See* NML Br. [Dkt. 30] at 6-7, 10-11.  The "core functions" test is used to determine whether a sovereign entity qualifies as a "separate legal person" under FSIA Section 1603(b) for the purpose of applying certain FSIA immunity or procedural provisions, including Section 1610(a) and (b), and 1608(a) and (b), which provide different rules for the state itself and for its separate "agencies or instrumentalities."  *See Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 495 F.3d 1024, 1035-36 (9th Cir. 2007), *vacated on other grounds*, 546 U.S. 450 (2006); Republic Br. at 15-17.  But *Bancec* prohibits courts from extending that *FSIA*-based inquiry to the *liability* context.  As the Ninth Circuit stated in *Flatow*, "the FSIA does not resolve questions of liability.  Questions of liability are addressed by *Bancec*, which examines the circumstances under which a foreign entity can be held

---

[2] NML wrongly assumes that this aspect of the Republic's motion to dismiss is based solely on Rule 12(b)(1).  NML Br. at 1 n.1.  The Republic expressly stated that CONAE's separate status warrants dismissing the Complaint "for both lack of subject matter jurisdiction *and failure to state a claim*" under Rule 12(b)(6).  Republic Br. at 12 (emphasis added).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

substantively liable for the foreign government's judgment debt." *Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1069 (9th Cir. 2002); *see also First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 620-21 (1983) ("*Bancec*") (FSIA "was not intended to affect the substantive law of liability. . . . 'for example, whether the proper entity of a foreign state has been sued, or whether an entity sued is liable in whole or in part for the claimed wrong'") (quoting H.R. Rep. No. 94-1487, 12 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6610). The "core functions" test – which, as NML concedes, the Supreme Court expressly declined to adopt in the context of assigning liability among entities, Republic Br. at 16[3] –accordingly may not be used to interpret the term "separate legal person" under the FSIA to hold CONAE liable for the debts of the Republic.

The Ninth Circuit's decision in *Cubic* – the court's only ruling to address the "core functions" test – does not suggest otherwise, as the court applied the test there in the context of determining whether Iran's Ministry of Defense was a "separate legal person" for the purpose of interpreting Section 1610(b)'s exceptions to execution immunity, as opposed to determining whether the Ministry should be liable for Iran's debts (the Ministry was deemed liable for Iran's debts as a result of a federal statute – the Terrorism Risk Insurance Act – that is inapplicable here). Republic Br. at 15.  Nor do the other cases that NML cites contradict *Bancec*'s instruction and extend the "core functions" test beyond the interpretation of FSIA provisions to assigning substantive liability among entities.  Republic Br. at 15. NML is wrong to charge that this framework results in the term "agency or instrumentality" meaning "one thing in § 1610 (addressing execution), but another

---

[3] NML tries to downplay the Supreme Court's rejection of the "core functions" test as a means of finding one entity liable for the debts of another by noting that the Court did so "in connection with assigning liability to an indisputably separate commercial entity."  NML Br. at 12.  But by rejecting the notion that the purported "governmental" nature of an entity's functions warrants disregarding its separate status, the Supreme Court was clearly not suggesting that that same test should be used to find that the entity is not separate in the first instance, thereby nullifying the substance of *Bancec*'s ruling.

1    thing in §§ 1605, 1606, and 1608 (addressing immunity, extent of liability, and

2    service)." NML Br. at 12; *see also id.* at 6. The only "variance" under this

3    framework is that a sovereign entity may in some circumstances be considered part

4    of a foreign state for purposes of applying the FSIA's procedural or immunity

5    provisions, but be considered separate for liability purposes.

6        In *Wye Oak Tech., Inc. v. Republic of Iraq*, 666 F.3d 205 (4th Cir. 2011), the

7    Fourth Circuit recognized this distinction when it considered whether the district

8    court erred in denying Iraq's motion to dismiss, for lack of subject matter

9    jurisdiction, a suit alleging breach of a contract entered into by Iraq's Ministry of

10   Defense. In affirming the district court and holding "*for jurisdictional purposes*"

11   only that Iraq and its armed forces were not separate legal persons, the Court –

12   citing *Bancec* – expressly noted that its decision would not "affect [Iraq's] ultimate

13   liability. . . . Determinations under FSIA go only to jurisdiction." *Id.* at 213 n.9.

14   As the court reasoned:

15       *Bancec* is not at odds with the core functions test and we could find no

16       opinion that has so held. The Court in *Bancec* was not faced with the

17       question of jurisdiction under the FSIA, to which the core functions test is

18       aimed. . . . [T]he two inquiries appear to complement each other as they are

19       both used to determine the separateness of government units, although in

20       different contexts.

21   *Id.* at 215 n.13. Although the Fourth Circuit ultimately found no error in the lower

22   court's refusal to resolve the liability issue under *Bancec* because Iraq had moved to

23   dismiss "under Rule 12(b)(1), rather than under 12(b)(6)," *id.* at 213 n.9, here, the

24   Republic *has* moved to dismiss under Rule 12(b)(6), and thus *Bancec* necessarily

25   applies, and requires the dismissal of the Complaint, *see infra* at 6-8.

26       *Second*, even if the "core functions" test were relevant to liability

27   determinations, NML is wrong that it applies to disregard the status of separately

28   created legal entities like CONAE. NML Br. at 13-14. As NML does not contest,

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

4

REPLY IN SUPPORT OF REP. OF
ARGENTINA'S MTN TO DISMISS

1  since the D.C. Circuit created the "core functions" test in *Transaero*, courts of

2  appeals have applied it *only* in the context of ruling that governmental departments,

3  ministries, or treasuries that are part and parcel of foreign state governments should

4  be treated as the foreign states themselves. *See, e.g.*, *Transaero, Inc. v. La Fuerza*

5  *Aerea Boliviana*, 30 F.3d 148, 153 (D.C. Cir. 1994) ("armed forces are as a rule so

6  closely bound up with the structure of the state that they must in all cases be

7  considered as the 'foreign state' itself"); *Garb v. Republic of Poland*, 440 F.3d 579,

8  582 (2d Cir. 2006) ("the Ministry of the Treasury would appear to be an integral

9  part of Poland's political structure") (internal quotation marks omitted); *Cubic*, 495

10 F.3d at 1035 ("we adopt a strong presumption that the armed forces constitute a part

11 of the foreign state itself"); *Wye Oak Tech., Inc.*, 666 F.3d at 215 (Iraq's Ministry of

12 Defense not separate from Iraq); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228,

13 234-35 (D.C. Cir. 2003) (Iran's Ministry of Foreign Affairs not separate because

14 "[t]he conduct of foreign affairs is an important and 'indispensable' governmental

15 function.") (internal quotation marks omitted).[4]  Outside of these core governmental

16 departments and ministries, courts continue to find sovereign entities separate

17 without applying the "core functions" test, even where those entities clearly do not

18 perform commercial functions. *See European Cmty. v. RJR Nabisco, Inc.*, No. 11-

19 2475-cv, 2014 WL 1613878, at *11 & n.15 (2d Cir. Apr. 29, 2014); *Peninsula*

20 *Asset Management (Cayman) Ltd. v. Hankook Tire Co., Ltd.*, 476 F.3d 140 (2d Cir.

21 2007) (Korea's Financial Supervisory Service, which has "oversight duties similar

22 to this country's [SEC]," is "agency or instrumentality").

23       Those cases do not support NML's request for this Court to disregard the

24 separateness of an entity that, unlike the above-mentioned ministries and

---

[4] The Second Circuit's pre-*Garb* decision in *Noga* did not apply the "core functions" test, but similarly ruled that there was no legal distinction between the Russian Federation and one of its "political organs," the Government of Russia. *Compagnie Noga D'Importation et D'Exportation S.A. v. The Russian Federation*, 361 F.3d 676, 688 (2d Cir. 2004).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5

REPLY IN SUPPORT OF REP. OF
ARGENTINA'S MTN TO DISMISS

departments, *was* created as a separate, self-sufficient agency.  Republic Br. at 5.
As an entity with "full management and financial independence" and its own Board
of Directors, *id.*, CONAE is plainly not "bound up" in or an "integral part of" the
Republic's governmental structure.  Nor are space exploration and research
"indispensable" to the functioning of a government, as is the conduct of foreign
affairs.  NML invokes the "core functions" test's categorical labels to give the
Court a false choice – either hold that CONAE's core functions are commercial in
nature, which is not true, or hold that CONAE is indistinguishable from the
Republic, which is also certainly not the case.  The "core functions" test was not
designed to be applied in cases like this one, and courts have accordingly refrained
from doing so.  This Court should do likewise.

Under *Bancec*, which controls the analysis here, CONAE's separateness,
including under Argentine law, plainly may not be disregarded, Republic Br. at 12-
14, notwithstanding NML's half-hearted assertions to the contrary, NML Br. at 14-
15.  NML's contention that CONAE lacks a "discern[i]ble corporate or ownership
structure," NML Br. at 14, both defies reality and mischaracterizes the FSIA.  The
FSIA does not mandate that "agencies or instrumentalities" have strict "corporate"
ownership structures – rather they may be any "separate legal person, corporate *or
otherwise*."  28 U.S.C. § 1603(b)(1) (emphasis added).  Regardless, as the decree
appended to NML's Complaint demonstrates, CONAE has a Board of Directors, an
Executive and Technical Manager that is akin to a CEO, and the power to establish
its separate organic structure, Compl. Ex. C Arts. 4-5 – all hallmarks of a distinct
corporate entity, and features foreign to political subdivisions integrated into a
foreign state's hierarchy.

NML's claim that CONAE must be entirely "free from oversight of its
'budgetary and personnel requirements'" to qualify as an agency or instrumentality,
NML Br. at 14, similarly overstates *Bancec*, which noted only that "often" agencies
and instrumentalities are not subject to the "same" such requirements with which

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

6

REPLY IN SUPPORT OF REP. OF
ARGENTINA'S MTN TO DISMISS

government departments must comply, 462 U.S. at 624.  CONAE plainly meets this description.[5]  CONAE's budget is fundamentally unlike that of government departments; special accommodation is made for CONAE's income from various revenue streams, Compl. Ex. C, Arts. 6(b)-(d), and CONAE is charged with "[o]btain[ing] the financial resources necessary for performance of its [own] activities," *id.* Art. 3(i).  Political subdivisions have none of these qualities.  For that reason, as well as the fact that CONAE was created with "full management and financial independence," *id.* Art. 1, NML is also wrong to claim that there is no evidence that CONAE is "primarily responsible for its own finances" or "run as a distinct economic enterprise," NML Br. at 14 (internal quotation marks omitted). The decree that NML cites demonstrates exactly the opposite.

Underlying the Supreme Court's ruling in *Bancec* was its concern that "[f]reely ignoring the separate status of government instrumentalities would result in substantial uncertainty over whether an instrumentality's assets would be diverted to satisfy a claim against the sovereign, and might thereby cause third parties to hesitate before extending credit to a government instrumentality without the government's guarantee."  462 U.S. at 626; *see also id.* at 625-26 ("[T]he instrumentality's assets and liabilities must be treated as distinct from those of its sovereign in order to facilitate credit transactions with third parties.").  That concern would become a reality here if CONAE's separate legal personality were disregarded and its assets suddenly became available to satisfy the Republic's

---

[5] NML's contention that minimal participation by the National Congress, the Executive, or Executive departments in CONAE's affairs would change this assessment, NML Br. at 8-9, is equally meritless.  *See, e.g., Peninsula Asset Mgmt.*, 476 F.3d at 143 (entity created "for the national purpose of examining, supervising, and investigating Korean financial institutions" was an "organ" and a "separate legal person" where parent government actively supervised entity by, among other things, appointing its governor and auditor and regulating the inspection fees it could collect); *O'Connell Mach. Co., Inc. v. M.V. Americana*, 566 F. Supp. 1381, 1384 (S.D.N.Y. 1983) *aff'd*, 734 F.2d 115 (2d Cir. 1984) (shipping line whose majority shares were owned by a government entity whose "annual budget and plans . . . [were] approved by a member of the [sovereign's] Cabinet and, ultimately, submitted to the Parliament" was an "agency or instrumentality" of foreign sovereign).

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

7

REPLY IN SUPPORT OF REP. OF
ARGENTINA'S MTN TO DISMISS

1  multi-billion dollar outstanding debt burden.  Such a ruling would threaten to

2  effectively shut down CONAE's scientific operations, harm the many third parties

3  to which CONAE owes obligations, and jeopardize the status of other space

4  agencies and similar separate entities.  The Complaint should be dismissed.

**B.    The Complaint Fails to Plausibly Allege that the Purported Foreign-State Property It Targets Falls Under an Exception to FSIA Immunity.**

7        Separate and apart from CONAE's presumptive separateness from the

8  Republic, the Complaint must also be dismissed because NML has failed to

9  plausibly allege that CONAE has property in the United States that it is using for a

10  commercial activity in the United States.  Republic Br. at 18-21.  As the Republic

11  demonstrated, the Complaint's only allegation of commercial use – that CONAE

12  "acquired" and "maintains" contract rights "*in connection with* [launch services]

13  contracts" as part of a sovereign mission, Compl. ¶ 33 (emphasis added) – fails as a

14  matter of law.  *See NML I*, 788 F. Supp. 2d at 1120 (property must be "put into

15  action, put into service, availed or employed *for* a commercial activity, not *in*

16  *connection* with a commercial activity") (quoting *Af-Cap Inc. v. Chevron Overseas*

17  *(Congo) Ltd.*, 475 F.3d 1080, 1091 (9th Cir. 2007)); Republic Br. at 20-21.

18  Recognizing that this deficiency alone warrants dismissal, NML abandons the

19  allegation altogether and "redefines" the alleged commercial use at issue, just as it

20  did in *NML I*.  788 F. Supp. 2d at 1121.  Even if the Court were to consider these

21  belated "last-ditch attempts" – which it should not – they too "are of no avail." *Id.*

22        NML now argues that CONAE is "using" its contract rights "to launch

23  satellites," NML Br. at 16-17, "to maintain its launch position," *id.* at 17, and "to

24  secure its ability to launch a satellite," *id.* at 18.  In other words, NML appears to

25  claim that CONAE is somehow "using" its right to receive contractual

26  consideration in order to obtain the ultimate contractual consideration itself.   This

27  is linguistic gymnastics, not something one would say "in ordinary usage." *Conn.*

28  *Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 254 (5th Cir. 2002)

("*CBC*") ("It would be strange to say that 'The employee uses his salary for his job.'  He *earns* his salary from his job, but he *uses* it to pay the rent, buy groceries, and so forth.").[6]  It is precisely the type of "strained analysis of the words 'used for'" that the Ninth Circuit has repeatedly "[c]aution[ed]" that the FSIA "does not contemplate," and runs counter to the court's instruction "to consider[] the use of the property in question in a *straightforward* manner."  *Cubic*, 495 F.3d at 1036 (emphasis added).[7]

While CONAE may have "used" the funds it paid to SpaceX to obtain the consideration at issue (which funds are now the property of SpaceX), it is clearly not "using" any derivative contract rights for that purpose in any common sense of the word.  As the Republic noted, the Ninth Circuit in *Cubic* explained what might constitute commercial "use" of an intangible right to receive, including using it "as security on a loan [or] as payment for goods." 495 F.3d at 1037.  CONAE, however, is doing nothing of the sort with its right to receive SpaceX's services.  It is not "putting them into action" or "putting them into service" for any activity at all – rather those rights are, and will remain, unused in CONAE's possession until they extinguish upon SpaceX's fulfillment of its contractual obligations to CONAE, an activity in which CONAE will take no part.  Tellingly, notwithstanding the frequency with which foreign states enter into contracts with U.S. parties, NML does not cite a single case adopting this novel, improper theory – or any case at all that applies Section 1610's "used for" requirement for that matter.

The only cases that NML does cite to support its theory – *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) and *Rush-Presbyterian-St. Luke's*

---

[6] Citing Paragraph 4 of the Varotto Declaration, NML claims that "Argentina affirmatively asserts that it is using the Launch Services Rights to launch two satellites."  NML Br. at 17.  Nothing in that paragraph, or elsewhere in the Varotto Declaration, supports that assertion.

[7] The principles set forth in this precedent are not "dubious," NML Br. at 18, or "conjured up," *id.* at 19 n.9.  They are the holdings of the Ninth Circuit and this and other courts.

*Med. Ctr. v. Hellenic Republic*, 877 F. 2d 574 (7th Cir. 1989) – are inapposite. Those decisions concern the definition of "commercial activity" in the context of applying Section 1605's exception to jurisdictional immunity, an inquiry separate from the question here, namely whether, under Section 1610, the property at issue was "used for" a commercial activity. *See* Republic Br. at 19 n.17; *Af-Cap Inc.*, 475 F.3d at 1087-88, 90 ("[T]his litany of cases [interpreting "commercial activity" under Section 1605] fails to enlighten our discussion because none of them analyze the pivotal phrase at issue in this case – 'used for a commercial activity in the United States.'"). NML's only response – that the Republic is arguing that "commercial activity" has a different meaning under Sections 1605 and 1610, NML Br. at 17-18 – is a straw man. The point, as the Ninth Circuit has recognized, is that the phrase "used for" is included in Section 1610, but not 1605, and thus cases interpreting the latter say nothing about the former's unique statutory requirements. *Af-Cap Inc.,* 475 F.3d at 1089 (citing *CBC*, 309 F.3d at 255).

Even if CONAE's possession of its contract rights did constitute "use" of them – which it does not – NML is also wrong to argue that such use is commercial in nature. The Complaint does not, and could not, plead that the CONAE satellites are part of a commercial mission. *NML I*, 788 F. Supp. 2d at 1125 n.5 (CONAE's satellite "may not be subject to execution [] because '[t]he alleged conduct itself – giving away [information] – is not a commercial activity"). It nonetheless argues that the derivative contract rights that are purportedly used to launch those satellites are somehow themselves commercial, because "SpaceX frequently contracts with private parties to perform these services." NML Br. at 18. The Court rejected this argument in *NML I* and should do so again here. As the Court stated:

> Plaintiff confuses the analysis by asking the Court to consider how the
> Satellite was built. . . . The relevant conduct to this action is Defendant
> Argentina's participation in a joint program with other nation-states to
> conduct a scientific and humanitarian mission, whereby data on the earth's

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10

REPLY IN SUPPORT OF REP. OF
ARGENTINA'S MTN TO DISMISS

> ocean will be collected from space and will be disseminated for free to the
> scientific community.  The conduct encompasses both pre-launch activities,
> like testing and preparation, and post-launch activities, mainly the gathering
> of information from space.

*NML I*, 788 F. Supp 2d at 1123-24 (citation omitted).

The Court then refused to accept NML's assertion that the satellite was being used for a commercial activity simply because private parties also engage in some of the pre-launch activities involved in the mission:

> Although Plaintiff may be correct, in that private companies employ
> satellite buses and operate remote sensing satellites, that fact in and of
> itself is not dispositive. . . . It also matters whether the collection of
> and distribution of oceanographic data at no cost are "part of the trade
> and commerce engaged in by a 'merchant in the marketplace.'"  They
> are not.  In addition, a private party would not be gathering data and
> distributing it to promote the interests of all of humanity.

*Id.* at 1125 n.5 (citing *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 92 (2d Cir. 2008), *abrogated on other grounds*, *Samantar v. Yousuf*, 560 U.S. 305 (2010)); *Kato v. Ishihara*, 360 F.3d 106, 112 (2d Cir. 2004).

The same analysis applies to the contract rights at issue here and renders them sovereign, and not commercial, in nature.  They are clearly encompassed in the undisputedly governmental mission's "pre-launch activities," and are thus not "commercial," notwithstanding that private parties may engage in similar conduct in other contexts.  Like in *NML I*, the contract for launch services here gives the mission no more than a "passing connection" to commercial activity, which is insufficient to convert the conduct at issue from sovereign to commercial in nature. *Af-Cap Inc.*, 475 F.3d at 1088 ("use" is "most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." (quoting *Jones v. United States*, 529 U.S. 848, 855

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

11

REPLY IN SUPPORT OF REP. OF
ARGENTINA'S MTN TO DISMISS

(2000)).  Just as the fact that a "presidential airplane requires periodic service and maintenance does not mean that it is being 'used for' commercial activity," *Colella v. Republic of Argentina*, No. C 07-80084 WHA, 2007 WL 1545204, at *6 (N.D. Cal. May 29, 2007), the fact that a sovereign's exploration of space requires a launch contract does not alter the sovereign nature of its conduct.

If the law were otherwise, judgment creditors could interfere with a host of clearly immune sovereign property – from presidential planes, *see id.* at 7, to diplomatic embassies, *see* Decision at 2-3, *Brant Point, Ltd. v. Republic of Congo*, Index No. 4238/04 (Sup. Ct. Westchester Cnty. Dec. 12, 2006) (Declaration of Donald Brown, dated May 15, 2014, Ex. A) – simply by attaching the contract rights that are necessary to "use" it.  Republic Br. at 20-21.  Under NML's theory, a judgment creditor could prevent an embassy from contracting for electricity, running water, and telephone services – effectively paralyzing it from functioning at all – unless and until a foreign state's judgments were paid.  As NML's utter lack of authority for this proposition demonstrates, that is not the law.

## III.   CONCLUSION

The Court should grant the Republic's motion and dismiss the Complaint with prejudice.

Dated:    June 16, 2014                MANATT, PHELPS & PHILLIPS, LLP


By:    /s/ Donald R. Brown
       Donald R. Brown
       Attorneys for *Defendant*
       THE REPUBLIC OF ARGENTINA

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Jonathan I. Blackman
Carmine D. Boccuzzi
Michael M. Brennan
Attorneys for *Defendant*
THE REPUBLIC OF ARGENTINA